THE STATE, DEFENDANT IN ERROR, v. DANIEL A. DUGAN, JR., PLAINTIFF IN ERROR.

Submitted March 20, 1913—Decided June 20, 1913.

1. The judge charged the jury: "One of the best ways of ascertaining the truth of the statements of a witness upon the witness-stand is to ascertain the interest of the witness in the story he tells on the stand." *Held*, that the judge did not by the use of the language, "One of the best ways," limit the jury to the consideration of the test specified to the exclusion of other matters which might tend to affect the credibility of a witness.

2. The maxim *falsus in uno falsus in omnibus* is a rule by which the probative force of testimony may be weighed and does not rise to the degree of an inflexible legal principle to be applied in all cases.

3. Where the judge in his charge left it to the jury to determine to what extent they would accept or reject any or all of the testimony of the defendant, if the jury believed that the defendant had testified willfully false in relation to a material fact, to wit, the speed of the car, the circumstance that the judge had prior thereto inaccurately stated the elements of the rule which should be present to warrant a rejection of such testimony, was rendered harmless.

4. An instruction to the jury, as follows: "Hence the duty of the defendant was to use reasonable care to run on Main street, at Day street, and over the westerly cross-walk on Main street at a speed not to exceed twelve miles an hour, if you find that the houses were less than a hundred feet apart, and also not to exceed a speed that was reasonable, having regard to the traffic and use of the highway, so as to endanger the life and limb of any person"—*Held*, not to be erroneous and did not leave it to be inferred, by the jury, that if the speed of the car was in violation of law that it was conclusive of the defendant's guilt.

5. The court instructed the jury as follows: "Our statute provides that any person who shall drive an automobile while in an intoxicated condition is guilty of a misdemeanor. If you find that the defendant was in an *intoxicated condition* while driving the automobile which struck Leo McDermott and that because of some grossly negligent act or acts of defendant in the operation of the automobile occasioned by such condition of intoxication McDermott was killed. the defendant is guilty of manslaughter." *Held*, that this instruction was proper and did not tend to confuse and mislead the jury, as to whether or not the defendant's liability would arise from a state of intoxication engendering grossly negligent acts or from the mere driving of the automobile in an intoxicated condition, which the law declares to be

a misdemeanor, when read in conjunction with other parts of the charge.

6. The act of 1911 (*Pamph. L., p.* 356) relating to indeterminate sentences—*Held,* to be constitutional.

7. The act of 1911 applies only to where a convicted offender is sentenced to imprisonment at hard labor in the state prison.

8. There is nothing contained in the act of 1911 that prevents a judge from exercising judicial discretion as to the character of the punishment to be imposed upon a convicted offender. He may send him to the state prison, county penitentiary or jail, and under certain circumstances to a reformatory institution; or he may impose a fine or suspend sentence altogether.

9. *In re Marlow,* 46 *Vroom* 400, where the cases are collected, followed.

On error to the Essex County Quarter Sessions.

Before GUMMERE, CHIEF JUSTICE, and Justices BERGEN and KALISCH.

For the state, *Wilbur A. Mott,* prosecutor of the pleas.

For the plaintiff in error, *Louis Hood.*

The opinion of the court was delivered by

KALISCH, J. The defendant was convicted of the crime of manslaughter. The testimony adduced at the trial tendered to establish that the defendant, in an intoxicated condition, propelled an automobile through the public thoroughfare of Orange with such gross carelessness as to evince a reckless disregard of human life, and which resulted in the killing of Leo McDermott, a lad fourteen years of age, who was in the act of crossing one of the thoroughfares. The case is up for review upon assignments of errors, and specifications of causes for reversal under the one hundred and thirty-sixth section of the Criminal Procedure act. The first four assignments, argued in the brief of the plaintiff in error, are based upon alleged errors in the court's charge to the jury. The first one is as follows: "One of the best ways of ascertaining the truth of the statements of a witness upon the witness-stand is to ascertain the interest of the witness in the story that he

tells on the stand." It is contended, by counsel for plaintiff in error, that in the use of the term "one of the best ways," the judge laid down a specific test to be adopted by the jury in the ascertainment of the truth or falsity of a witness, and that in so doing it in effect tended to exclude from the minds of the jury a consideration of all the other evidence in the case bearing upon the credibility of the defendant. We are unable to discern any substance to this contention. While it is true that the law lays down no specific tests for the ascertainment of the truth or falsity of a witness, yet there are well-recognized conditions of which the law takes notice, as affording a means of ascertaining to what extent, if any, credit may be given to a witness, a conspicuous example of which is the interest that a witness has in the case in which he is testifying. This is not without judicial authority in this state. In *Haver* v. *Central Railroad Co., 35 Vroom* 312, Mr. Justice Gummere, delivering the opinion of the Court of Errors and Appeals (on *p.* 313), says: "That interest in the result of a suit is apt to produce bias on the part of a witness may be shown for the purpose of discrediting him, is elementary law." In the case *sub judice* the court did not lay down, for adoption by the jury, any particular way to the exclusion of other ways, in weighing and determining the credibility of witnesses. The judge suggested one of the ways to the jury which he opined was one of the many good ways, evolved from experience, by which the credibility of witnesses may be ascertained, weighed and determined. The language used by the judge clearly implies other ways equally as good. He did not thereby in any sense exclude from consideration by the jury other matters and circumstances which might tend to affect the credibility of a witness. An intelligent jury could not have been misled by the instruction. If counsel for defendant desired a more ample instruction from the court in that respect, he could have asked for it in the form of a request to charge. He did not see fit to do so. Moreover, the criticised excerpt, when read in conjunction with what the court further said upon the subject, appears to be invulnerable to the attack made upon it.

The next point made is that the court erred in charging the jury as follows: "There is another principle or rule, and that is, if a witness tells something on the witness-stand which you believe to be untrue, you may, if you so desire, for that reason reject all his story." This was an erroneous statement of the rule, but it was corrected and its harmfulness cured by the judge, who, at the close of his charge, said: "Before you retire, gentlemen, I wish to say that in order that there may be no misunderstanding as to what I have said, you must find, if you believe a person made a misstatement on the stand, that it was a willful misstatement, and only for a willful misstatement can you reject all the testimony of the witness."

But the insistence of the plaintiff in error further is that the addendum did not amend the entire inaccuracy of the court's first instruction, because the judge did not include within what he said, as to the operation of the rule, that the willful misstatement must be as to a material fact. It appears, however, from the charge that the judge, at the time the rule was stated, was commenting upon a material fact in the case, which was as to the speed of the car, and it was in connection with that testimony that the court stated the rule, so that the jury's attention at the time was fixed by the judge, to the important and material fact whether or not the defendant had falsely testified as to the speed at which he was propelling the car. The jury, therefore, could not have been misled by what the judge said as to the rule. The maxim *falsus in uno falsus in omnibus* is not a mandatory rule of evidence, but is rather a permissible inference that the jury may or may not draw when convinced that an attempt has been made to mislead them in some material respect. *Addis* v. *Rushmore*, 45 *Vroom* 650.

It is a rule by which the probative force of testimony may be weighed, and which rule does not rise to the degree of an inflexible legal principle to be applied in all cases. It is to be observed that it is in this light that the trial judge left it to the jury to determine to what extent it would accept or reject any or all of the testimony of the defendant, if the jury

believed he had testified willfully false, in relation to the material fact—the speed of the car.

The plaintiff in error further urges that the court erred in the following instruction to the jury: "Hence, the duty of the defendant was to use reasonable care to run on Main street, at Day street, and over the westerly crosswalk on Main street at a speed not to exceed twelve miles an hour, if you find that the houses there were less than a hundred feet apart, and also not to exceed a speed that was reasonable, having regard to the traffic and use of the highway, so as to endanger the life and limb of any person." The argument advanced is that this instruction left it to be inferred by the jury that the simple fact, that the speed of the car was in violation of the law, regulating the same, was conclusive of the defendant's guilt. The plain reading and meaning of the language employed by the judge admits of no such inference. It is palpable that the instruction states the legal principle accurately.

The last instruction to the jury, assailed as erroneous, by the plaintiff in error, is as follows: "Our statute provides that any person who shall drive an automobile while in an intoxicated condition is guilty of a misdemeanor. If you find that the defendant was in an intoxicated condition while driving the automobile which struck Leo McDermott, and that because of some grossly negligent act or acts of defendant in the operation of the automobile occasioned by such condition of intoxication McDermott was killed, the defendant is guilty of manslaughter."

It is argued that this instruction tended to confuse and mislead the jury as to whether the defendant's liability would arise from a state of intoxication engendering grossly negligent acts, or from the mere driving of the automobile in an intoxicated condition, which the law declares to be a misdemeanor. The instruction was too plain to permit any inference to be drawn from it by the jury that the finding of the mere fact that the defendant was intoxicated would fix the defendant's guilt of the crime charged. The pertinent inquiry was not what was the producing cause of the negli-

gent acts or act, for whether the defendant was drunk or
sober was wholly immaterial, and neither condition was an
essential requisite to fix his responsibility for the death of
McDermott. The real inquiry was: Was the death of Mc-
Dermott occasioned by some grossly negligent acts or act of
the defendant, in the operation of the automobile, as unfolded
by the testimony? It was proper for the judge to tell the
jury that intoxication was no legal excuse, and that is what
he practically did when he said that if the condition of in-
toxication occasioned the grossly negligent acts or act in the
operation of the automobile whereby McDermott was
killed, the defendant was guilty of manslaughter. And
furthermore, it was proper comment for the court to make
that the law denounced as a misdemeanor the driving of an
automobile by a person in an intoxicated condition. We find
no error in the instruction.

We now turn to a consideration of the assignments based
upon alleged errors in the cross-examination of James A.
Clark and Louis G. Nolte, defendant's witnesses. The ques-
tions put by the prosecutor of the pleas to the witnesses Clark
and Nolte, and which were objected to by defendant's counsel
and which objections were overruled by the court, were de-
signed to show that they had been drinking on Christmas
eve, the night before the occurrence of the accident. The
answers of the witnesses were either a denial of this fact or a
declaration that they did not remember anything of the kind.
This testimony, of course, was harmless.

Another assignment is based upon the direct examination
of Wilbur E. Matthews, who was called by the state in re-
buttal to testify as to the speed of the car on Harrison street.
The claim made is that the testimony was incompetent, and
if competent should have been offered on the state's main
case. This contention cannot prevail. Even if the testimony
as to the speed with which the defendant was running the car
on Harrison street was incompetent, it was made competent
by defendant's own testimony upon the witness-stand, where
he said upon his direct examination that at no time was he
going faster than twenty miles an hour. The testimony of
Matthews offered by the state tended to contradict defend-

ant's statement in that respect, and was, therefore, clearly competent and proper on rebuttal. We have examined the numerous other assignments of errors, relating to the rulings by the court in the admission of and the refusal to strike out certain testimony, and find them to be destitute of merit.

The only other assignment left for consideration is the one which attacks the legality of the judgment pronounced upon the defendant, under the act of 1911 (*Pamph. L., p.* 356), relating to indeterminate sentences. The contention of the plaintiff in error is that the act is unconstitutional, in that it is repugnant to articles 3 and 6 of the constitution of New Jersey.

Article 3 declares that the judicial power shall be separate and distinct from the legislative and executive. Article 6 vests the judicial power in the courts enumerated therein and thereafter created by virtue thereof.

The argument addressed to us is that the fixing of a sentence is a judicial and not a legislative act, and therefore the act of 1911, which attempts to fix the sentences to be imposed, is an assumption of judicial power—an encroachment upon the constitutional provisions invoked. The foundation underlying the argument is palpably unsound. The pronouncing of a sentence is, undoubtedly, a judicial act. But the punishment which the sentence pronounces comes from the law itself. As Blackstone truly expressed it, under head of "Judgment and its Consequences," "the court must pronounce that judgment which the law hath annexed to the crime." It is further said that the statute in effect curtails the judicial discretion, to be exercised by the judge. Granting that it does, it is, nevertheless, the valid exercise of legislative power under the constitution over crimes.

In *Barker* v. *People,* 3 *Cow.* 704, Chancellor Sanford said: "The power of the legislature in the punishment of crimes is not a special grant, or a limited authority, to do any particular thing, or to act in any particular manner. It is a part of 'the legislative power of this state,' mentioned in the first sentence of the constitution. It is the sovereign power of the state to maintain social order by laws for the due punish-

ment of crimes. It is a power to take life, and liberty, and all the rights of both, when the sacrifice is necessary to the peace, order and safety of the community. This general authority is vested in the legislature, and as it is one of the most ample of their powers its due exercise is among the highest of their duties." And on page 705 he continued: "The power of the state over crimes is thus committed to the legislature, without a definition of any crime, without a description of any punishment to be adopted, or to be rejected, and without any direction to the legislature concerning punishments. It is, then, a power to produce the end by adequate means; the power to establish a criminal code, with competent sanctions; a power to define crimes and prescribe punishments by laws, in the discretion of the legislature."

The learned Chancellor (on *p.* 704) sums up briefly the constitutional limitation upon the exercise of this power thus: "The rights of a citizen are thus subject to the power of the state in the punishment of crimes; and the restrictions of the constitution upon this, as upon all the general powers of the government, are that no citizen shall be deprived of his rights, unless by the law of the land or the judgment of his peers, and that no person shall be deprived of life, liberty or property without due process of law."

The late Chief Justice Depue quoted these views with decided approval in *State* v. *Gedicke* (1881), 4 *N. J. L. J.* 55.

It is to be observed, in this connection, that the act of 1911 only applies to where the convicted offender is to be sentenced to imprisonment in the state prison. There is nothing in the statute that prevents the judge from exercising his judicial discretion as to the character of the punishment to be imposed upon the convicted offender. He may send him to the state prison, penitentiary or county jail, and in certain cases to a reformatory institution; or he may impose a fine or suspend sentence altogether.

The reasoning of Mr. Justice Swayze, *In re Marlow,* 46 *Vroom* 400, where the cases are collected, is peculiarily applicable to the question under consideration and is approved and followed.

The views expressed lead to an affirmance of the judgment.