# TERRITORY OF HAWAII *v.* WILLIAM F. ARMSTRONG

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.
HON. C. W. ASHFORD, JUDGE.

ARGUED APRIL 1, 1915.                    DECIDED APRIL 14, 1915.

WATSON AND QUARLES, JJ., AND CIRCUIT JUDGE WHITNEY
IN PLACE OF ROBERTSON, C.J., ABSENT.

EMBEZZLEMENT—*indictment—allegation and proof.*

> A. was indicted charged with embezzling certain bonds which were in his possession by the consent and authority of a certain incorporated lodge, the owner, by converting them to his own use, unlawfully, wilfully, fraudulently and feloniously, and without the consent of such owner. The evidence showed that he was a trustee, and treasurer of the board of trustees, of said lodge, and as such received the bonds, sold them, and used the proceeds: Held that the verdict and judgment of conviction should not be set aside on the ground of variance between allegation and proof.

SAME—*demurrer or motion to quash indictment—waiver.*

> If an indictment under section 3934 R. L. 1915, charging embezzlement, be defective in that it fails to allege the fiduciary relation under which property charged to have been embezzled was received by the defendant, *a question not decided,* an objection for that reason should be made by demurrer or motion to quash, prior to plea; and, if not so made, such objection is waived.

EVIDENCE—*embezzlement—proof of existence of corporate owner.*

> Evidence, documentary and otherwise, showing that the alleged owner of property charged to have been embezzled is a domestic corporation, and organized as such, is admissible on the trial of one charged with embezzling the property of such corporation.

SAME—*evidence tending to show value.*

> Where the indictment charged the embezzlement by defendant of certain bonds owned by one corporation, issued by another corporation, evidence that the latter was incorporated, issued the bonds named in the indictment and secured them by mortgage, is admissible as tending to show that the bonds embezzled were of value.

SAME—*corpus delicti—order of proof.*

> Evidence tending to establish the *corpus delicti* should be introduced before admitting declarations made by defendant inconsistent with the facts; and where checks received by the defendant

as proceeds of securities embezzled were indorsed by him and cashed, his indorsements of such checks should be proven before they are admitted in evidence, but if admitted out of their regular order, and evidence of his indorsements is later introduced, the order of proof becomes immaterial.

SAME—*evidence showing value of embezzled property.*

Evidence showing the market value of property embezzled at the time of the alleged embezzlement is admissible.

SAME—*written declarations of a third party.*

On a trial on the charge of embezzlement, the complaint of a third party in a civil action claiming the property charged to have been embezzled, is not admissible, the same being an *ex parte* declaration which is not competent to prove the ownership of the embezzled property.

CONSTITUTIONAL LAW—*indeterminate sentence statute.*

Section 3843 R. L. 1915, does not impinge upon the power and discretion vested in the court by section 81 of the Organic Act, is within the legislative power, and is not unconstitutional.

## OPINION OF THE COURT BY QUARLES, J.

The defendant, appellant here, was indicted charged with the crime of embezzlement committed at the city and county of Honolulu, Territory of Hawaii, tried before a jury, convicted, and sentenced to a term of two years imprisonment. The charging part of the indictment, after formal averments, is as follows: " * * * the said William F. Armstrong, being then and there entrusted with, and having the possession, control, custody and keeping of a thing of value, to wit, those certain bonds of the Olaa Sugar Company, Limited, numbered respectively No. 989, No. 990, and No. 991, each for the amount of one thousand dollars, of the total aggregate value of three thousand dollars, by the consent and authority of Honolulu Lodge No. 800 Loyal Order of Moose of the World, a corporation duly organized and existing under and by virtue of the laws of the Territory of Hawaii, the owner thereof, of the money and property of the said Honolulu Lodge No. 800 Loyal Order of Moose of the World, unlawfully, wilfully, fraudulently and feloniously did convert and dispose of the same to his own use and benefit, without the consent and against the will of the said owner

thereof, and did then and thereby commit the crime of embezzlement, contrary to the form of the statute in such case made and provided." The evidence shows that defendant was one of the trustees, and treasurer of the board of trustees, of said lodge, which was duly incorporated under the laws of the Territory of Hawaii, and, as such trustee, received the said described bonds, owned by the lodge, sold them, and converted· the proceeds thereof to his own use. At the close of the trial counsel for defendant moved that he be discharged, and that the court instruct the jury to find for the defendant, on the ground of variance between allegation and proof, the indictment charging that he embezzled the bonds as an individual; while the proof tends to show that if such crime was committed, that it was committed by defendant in an official capacity. The motion to discharge, and the motion to instruct the jury to find for defendant, was each overruled. The first exception is to the action of the court in overruling said motions. The specific contention of the defendant is that in order to sustain a conviction under the evidence, the indictment should have charged that the defendant "as treasurer of the Board of Trustees of Honolulu Lodge No. 800 Loyal Order of Moose of the World" received said bonds and embezzled them. This contention is based upon the idea that the fiduciary relation of the defendant, whether direct or indirect, is an essential element of the crime charged against the defendant; and, being such, it is necessary to allege this fiduciary relation in accordance with the facts. It will be noted that the indictment substantially follows the statute (R. L. 1915, Sec. 3934), and this is usually held sufficient. The statute is as follows:

"If any person who is intrusted with, or has the possession, control, custody or keeping of a thing of value of another, by the consent or authority, direct or indirect, of such other, without the consent and against the will of the owner, fraudulently converts or disposes of the same, or attempts so to convert or dispose of the same, to his own use and benefit, or to the use

and benefit of another than the owner or person entitled thereto, he is guilty of the embezzlement of such thing."

The indictment in question unmistakably charges the defendant with having the possession, control, custody and keeping of the bonds in question, "by the consent and authority of Honolulu Lodge No. 800 Loyal Order of Moose of the World, * * * the owner thereof," a conversion to his own use, and that such conversion was without the consent of the said owner. It would, undoubtedly, have been good pleading to have alleged that "as treasurer of the Board of Trustees of Honolulu Lodge No. 800 Loyal Order of Moose of the World" the defendant had possession, etc., and if our statute had been drawn in the usual phraseology in which we find similar statutes, i. e., "Every servant, agent, clerk," etc., "entrusted with," etc., the question would be different. In the case of *De Leon* v. *Territory,* 9 Ariz. 161, the indictment did not state the purpose with which the defendant was entrusted with the alleged embezzled property, for which reason it was contended the indictment was defective. The court, at page 168, said: "It is frequently the case that money or property is intrusted to a person generally for the use and benefit of another person, without any particular use or purpose being in mind at the time the property is intrusted to the agent or person who afterwards embezzles it. To adopt the argument of the appellant in the case at bar would render it impossible to convict an embezzler who might appropriate to his own use trust funds in every such instance, and minimize the beneficial effect of this statute by confining its operations to those cases only in which the money had been intrusted to him for some specific purpose, and that specific purpose be susceptible of proof." The indictment charged, and the evidence established, that defendant was entrusted with the bonds by the consent and authority of the owner; and that he fraudulently converted the same to his own use without the consent of said owner. If we admit, which we do not, that the indictment was defective in that it did not allege the capacity in which the defendant re-

ceived possession of the bonds, yet, such defect was apparent on the face of the indictment, and that question should have been raised by demurrer, or motion to quash before pleading to it. Failure to object to the indictment on the ground mentioned, prior to plea, waived such objection (R. L. 1915, Sec. 3808).

Exceptions 2, 15, 24 and 25 were disallowed by the trial court.

Exceptions 3 to 8 inclusive are to the instructions given by the trial court at the request of the prosecution, are general in their nature and suggest no error in either of the instructions. The brief on behalf of defendant does not point out any error in either of the instructions. However, we have carefully examined the instructions with reference to the evidence introduced before the jury, and find no error in them.

Exceptions 9 to 47 inclusive are to the action of the trial court in admitting and rejecting evidence. Owing to the nature of these exceptions we feel compelled to discuss them generally, grouping them into classes. One class challenged the admission of the articles of incorporation of Honolulu Lodge No. 800 Loyal Order of Moose of the World, and other evidence showing its corporate organization, on the ground that there was no evidence to show that the lodge was authorized to act, or chartered by the Supreme Lodge of the Loyal Order of Moose of the World. The admission of such evidence was not error. The alleged owner of the property charged to have been embezzled, was a domestic corporation, an artificial person, having, as such, a legal entity; capable of owning the property alleged to have been embezzled, whether it was working under a charter from a supreme or other lodge of the order with which it might, or might not, have been affiliated.

Another class of exceptions was to the admission of documentary and other evidence tending to prove that the Olaa Sugar Company, Limited, was incorporated; that it issued the bonds in question, and secured the said bonds by mortgage upon

certain property. Such evidence was admissible as tending to show that the bonds alleged to have been embezzled were of value.

Other exceptions touch the admissibility in evidence of the by-laws of the alleged corporate owner of the bonds alleged to have been embezzled; showing who the officers and trustees of said corporation were at the time of the alleged embezzlement; and how the defendant came into possession of the said bonds. All of such evidence was admissible, tending as it did to establish the organization of the corporate owner of the bonds, and the circumstances under which defendant held them.

Some of the exceptions challenge the admission of certain declarations made by defendant to the witness Leithead, in San Francisco, to the effect that he left the bonds in the office of the Honolulu Lodge No. 800 Loyal Order of Moose in the Progress Block in Honolulu, there being then no evidence of the *corpus delicti* before the jury. The natural order of proof would have postponed the introduction of such evidence until the *corpus delicti* had been proven. Yet, as proof was thereafter introduced showing that defendant sold the bonds in Honolulu, receiving something more than $1800 for them, the order in which the said declarations were proven became immaterial, and defendant was not prejudiced thereby.

Some of the exceptions were to the admission in evidence of certain receipts given by defendant to the Trent Trust Company for the proceeds of the bonds charged to have been embezzled; the introduction of a deposit slip, and drafts for the money deposited and drawn out of bank by defendant, on the ground that the *corpus delicti* had not been proven. There was evidence showing that the bonds in question were placed by the defendant with said Trent Trust Company, as broker, for sale; that said broker sold said bonds for defendant, and paid the proceeds, less its commission, to the defendant; and, that defendant deposited one check received by him with Bishop & Company, bankers, to his own account, afterwards drawing it out, taking

a bill of exchange on a California bank therefor in his own name; and that he cashed another check received by him from said broker as proceeds for the sale of one of the bonds alleged to have been embezzled by him. There was no error in the admission of any of this evidence. It, with other evidence, tended to establish the *corpus delicti*, tended to show the conversion by the defendant, and the intent of the defendant in converting the bonds.

The witness Heiser identified the checks received by the defendant for the proceeds of the three bonds, whereupon the checks were received in evidence over the objection of defendant that the endorsement of defendant's name on the checks had not been proven. Evidence was afterwards introduced tending to prove the endorsements on the checks to have been in the handwriting of the defendant. Here, as in case of the declaration of the defendant, hereinbefore mentioned, the order of proof became immaterial when evidence proving all the material facts was introduced. It was error to admit the checks and the endorsements thereof before the evidence was offered tending to prove that the checks were indorsed by the defendant, but defendant was not prejudiced thereby.

Some of the exceptions were to the admission of evidence tending to show the value of the bonds at the time they were sold, showing that they sold for the aggregate of $1875, or $625 each, and that that price was, at the time, their market value. The admission of such evidence was proper.

Other exceptions were to the action of the trial court in admitting evidence tending to show that the defendant did not return the said bonds, nor the proceeds thereof, or any thereof to said corporate owner. There was no error in admitting such evidence.

Other exceptions were to the action of the trial court in refusing to admit evidence tending to show that Honolulu Lodge No. 800 Loyal Order of Moose of the World had been supplanted by Honolulu Lodge No. 1, Modern Order of Phoe-

nix, which claimed said bonds and which brought a suit against the Trent Trust Company, said broker, to recover the said bonds. The court properly rejected such evidence. There was no evidence showing that Honolulu Lodge No. 800 Loyal Order of Moose of the World had ceased to exist, or that it had sold the bonds, or parted with the title thereto, and evidence showing that another lodge claimed the bonds and had brought suit for the same was not competent. The complaint in such suit was properly rejected on the ground that it was an *ex parte* declaration, and did not tend to show that title to the bonds had passed out of the alleged corporate owner prior to the embezzlement.

For the reasons herein indicated the exceptions to the verdict and judgment, and the refusal of the court to grant a new trial, on the ground that the evidence was insufficient, and the verdict and judgment were contrary to evidence, must be overruled. The jury were justified in finding from the evidence before it all of the material facts alleged in the indictment.

We now come to a consideration of defendant's exception to the sentence upon the ground that it is illegal and contrary to law. The sentence was specific, imposing a term of imprisonment for two years, and did not fix a minimum sentence as required by the indeterminate statute. The indeterminate statute, enacted in 1909 and amended in 1911, is now chapter 216 Revised Laws 1915. It provides, except in certain cases, that when a person is convicted of a felony, the court shall not fix the duration of the sentence, but that the term of imprisonment shall not exceed the maximum nor be less than the minimum term prescribed by law for the crime for which the person was convicted and sentenced; that where the maximum sentence in the discretion of the court may be for life or any number of years, the court shall fix the maximum sentence; and in all cases in which no minimum sentence is prescribed by law the court shall fix such minimum sentence, which minimum sentence shall not be more than five years. Other sections provide for a system of credits to a convict on account of good behavior,

for his parole after serving the minimum sentence fixed by statute or by the court, for his final discharge after the expiration of six months of his parole when his conduct during parole has been satisfactory to the warden, who makes report thereof to the attorney general, together with the record of the prisoner, and the attorney general in turn reports to the governor, who is authorized to order the prisoner's final discharge. The trial court held the said indeterminate sentence law to be unconstitutional in that it impinges upon the judicial power and discretion vested in the trial court, contrary to the provisions of section 81, of the Organic Act, which provides: "That the judicial power of the Territory shall be vested in one supreme court, circuit courts, and in such inferior courts as the legislature may from time to time establish."

Our indeterminate statute is, in all essential features, the same as those of Illinois, Indiana, Iowa, Michigan, New York, Nevada, Pennsylvania and other states, and which have been held constitutional and valid in all of them, with two exceptions. In an early case in Michigan, *People v. Cummings,* 88 Mich. 249, the statute was held to be unconstitutional in that it interfered with the power of pardon as it was vested in the governor by the constitution of that State. The people thereafter amended their constitution so as to authorize such a statute, and it has been in full force in Michigan for many years. In *Ex parte Marshall,* 161 S. W. 112, the criminal court of appeals of Texas held an indeterminate statute void upon the ground that "it is so indefinitely framed, and of such doubtful construction, that it is impossible to ascertain its meaning." Texas has since adopted another indeterminate sentence law, and is enforcing it.

Modern science, and continued efforts of philanthropists, have labored to the end that persons unfortunate enough to be convicted of crime should have opportunities for reforming, and remodeling their lives; to the end that punishment shall be largely divested of the vindictive spirit, and convicts induced

to render obedience to law as well as the interests of society. "While it is the purpose in these days of broader views of the duty of society towards its individuals to remove from the criminal law the vindictive spirit, so far as such may safely be done without impairing the rights of the people as a whole and as individuals, yet such purpose is not of such strength as to give to the courts the power of legislation" (*McKinnon* v. *Sanders,* 143 N. W. 407).

The courts of the many states that have adopted the indeterminate sentence law hold that it does not interfere with the judicial power of the courts, does not interfere with judicial discretion, does not interfere with the power of the governor to grant pardons, and is not unconstitutional (*Commonwealth* v. *Kalck,* 239 Pa. St. 534; *Bloom* v. *State,* 155 Ind. 294; *Miller* v. *State,* 149 Ind. 607; *Wilson* v. *State,* 150 Ind. 697; *Vancleave* v. *State,* 150 Ind. 273; *Shular* v. *State,* 160 Ind. 300, 310; *George* v. *People,* 167 Ill. 447; *People* v. *State Reformatory,* 148 Ill. 413; *People* v. *Deluce,* 237 Ill. 541; *People* v. *Joyce,* 246 Ill. 124; *In re Howard,* 72 Kan. 273; *Commonwealth* v. *Brown,* 167 Mass. 144; *People* v. *Adams,* 176 N. Y. 351, 362; *Wilson* v. *Commonwealth* (Ky.), 132 S. W. 557; *State* v. *Peters,* 43 Ohio 629; *State* v. *Dugan,* 84 N. J. L. 603).

In the last case cited, the court, at page 609, said: "The argument addressed to us is that the fixing of a sentence is a judicial and not a legislative act, and therefore the act of 1911, which attempts to fix the sentences to be imposed, is an assumption of judicial power—an encroachment upon the constitutional provisions invoked. The foundation underlying the argument is palpably unsound. The pronouncing of a sentence is, undoubtedly, a judicial act. But the punishment which the sentence pronounces comes from the law itself. As Blackstone truly expressed it, under head of 'Judgment and its Consequences,' 'the court must pronounce that judgment which the law hath annexed to the crime.' It is further said that the statute in effect curtails the judicial discretion to be exercised by

the judge. Granting that it does, it is, nevertheless, the valid exercise of legislative power under the constitution over crimes." Under the authorities, apparently unanimous, and in accord with the progressive spirit of the times, we are constrained to hold that our indeterminate statute is a valid exercise of legislative power, and constitutional.

We hold that the sentence, while it fails to fix a minimum of the term of imprisonment, is not void, but erroneous. The maximum fixed by the statute (R. L. 1915, Sec. 3935), ten years at hard labor, enters into and becomes a part of the sentence, as though incorporated therein, notwithstanding any statement in the sentence to the contrary (*In re Setters,* 23 Ida. 270; *Ex parte Duff,* 141 Mich. 623; *People* v. *State Reformatory,* 148 Ill. 413; *Miller* v. *State,* supra; *Ex parte Melosevich* (Nev.), 133 Pac. 57; *Adams* v. *Barr* (Iowa), 134 N. W. 564; *Ex parte Evans* (Mich.), 138 N. W. 276). The sentence is erroneous in that it does not fix the minimum term of imprisonment of the defendant, a right which the defendant has under the law. The proceedings being regular and free from prejudicial error, the verdict authorized by the evidence, and the defendant having had a fair trial, the error in the sentence may be corrected (*In re Richards,* 150 Mich. 421; *In re Howard,* supra; *People* v. *Coleman,* 251 Ill. 497; *Martoni* v. *State* (Tex. Crim. Apps.), 167 S. W. 349). "Where there is no reversible error except that, in sentencing, the lower court has exceeded its power or imposed a sentence which is vague and indefinite, the appellate court on a reversal will not order a new trial, but will remand the case to the trial court for the imposition of a proper judgment and sentence" (12 Cyc. 942).

Following the precedent established in the case of *Territory* v. *Savidge,* 14 Haw. 286, the judgment imposing sentence against the defendant is set aside, and the case is remanded to the circuit court with instructions to render judgment sentencing the defendant pursuant to the provisions of the indeterminate sentence law (Sec. 3843, R. L. 1915).

*J. W. Cathcart, City and County Attorney (E. C. Peters*
with him on the brief) for the Territory.

*I. M. Stainback, Attorney General,* at the request of the
court, filed a brief for the Territory.

*G. A. Davis* for defendant.