[Crim. No. 2126. In Bank.—March 8, 1918.]

## In the Matter of the Application of CHARLES LEE for a Writ of Habeas Corpus.

CRIMINAL LAW — INDETERMINATE SENTENCES — STATUTE — CONSTITU-TIONAL LAW—DIVISION OF GOVERNMENT INTO SEPARATE DEPART-MENTS.—Section 1168 of the Penal Code (Stats. 1917, p. 665), approved May 18, 1917, providing for the imposing of indetermin-ate sentences on persons convicted of a public offense punishable by imprisonment, does not violate section 1 of article III of the state constitution, providing for the division of the state govern-ment into three separate departments,—legislative, executive, and judicial,—and prohibiting the exercise of the powers of one of these departments by any of the others.

ID.—EFFECT OF INDETERMINATE SENTENCE—MAXIMUM TERM.—The in-determinate sentence under said section 1168 of the Penal Code is in legal effect a sentence for the maximum term.

ID.—NOT A DELEGATION OF LEGISLATIVE AUTHORITY.—The indetermin-ate sentence law (section 1168 of the Penal Code), is not a delega-tion of legislative authority to the board of prison directors, the legislative function being filled by providing the sentence which is to be imposed by the judicial branch upon the determination of the guilt of the offender.

ID.—NOT A DELEGATION OF JUDICIAL AUTHORITY.—The indeterminate sentence law is not a delegation to the prison directors, of judicial authority, the judicial branch of the government being intrusted with the function of determining the guilt of the individual and of imposing the sentence provided by law for the offense of which he may have been found guilty.

ID.—STATUTORY CONSTRUCTION—EFFECT OF ADOPTION OF STATUTE PRE-VIOUSLY CONSTRUED BY DECISIONS OF OTHER STATE COURTS.—The fact that many decisions of courts of other states which were ren-dered before the adoption by this state of the indeterminate sentence law, to the effect that such laws do not violate constitutional provi-sions providing for a segregation of governmental powers into three departments, legislative, executive, and judicial, should be considered in determining whether the statute is so clearly a violation of the gen-eral provision in regard to the division of the government into de-partments as to require our courts to hold it to be unconstitutional.

ID.—EX POST FACTO LAW—APPLICABILITY OF LAW TO OFFENSE COM-MITTED PRIOR TO ENACTMENT.—A provision in the act to the effect that the prisoner shall serve the maximum term unless, before that time, the board of prison directors fixes a shorter time and grants a release, renders it unconstitutional and *ex post facto* as to one

whose offense was committed before the enactment of the law, since it substitutes the discretion of the board for the statutory right, which, at the time of the commission of the offense, existed in favor of one convicted of crime, under which he was entitled to credits for good behavior during imprisonment.

ID.—HABEAS CORPUS—INVALID SENTENCE—RESENTENCE.—An indeterminate sentence having been held invalid as to a prisoner convicted of crime, committed before the enactment of the indeterminate sentence law, the prisoner was not entitled to his discharge, but should be returned to the superior court of the county where he was convicted, for sentence under the law as it stood at the time of the commission of the crime, notwithstanding the provisions of sections 1191 and 1202 of the Penal Code, fixing the time for sentence.

APPLICATION for Writ of Habeas Corpus.

The facts are stated in the opinion of the court.

W. D. L. Held, and Fred S. Howell, for Petitioner.

Edwin V. McKenzie, Hyman Levin, and William F. Herron, *Amici Curiae.*

U. S. Webb, Attorney-General, and John H. Riordan, Deputy Attorney-General, for Respondent.

WILBUR, J.—On October 5, 1917, the petitioner was sentenced after verdict for manslaughter committed May 16, 1917. This sentence is what is known as an indeterminate sentence, and was that the petitioner be punished by imprisonment "in the state prison at San Quentin for the term of from one to ten years." This sentence was obviously imposed under the provisions of section 1168 of the Penal Code (Stats. 1917, p. 665), approved May 18, 1917, and which went into effect July 27, 1917, providing that "every person convicted of a public offense, for which public offense punishment by imprisonment in any reformatory or the state prison is now prescribed by law, if such convicted person shall not be placed on probation, a new trial granted, or imposing of sentence suspended, shall be sentenced to be confined in the state prison, but the court in imposing such sentence shall not fix the term or duration of the period of imprisonment.

"(b) It is hereby made the duty of the warden of the state prison to receive such person, who shall be confined until duly released as provided for in this act; provided, that the period of such confinement shall not exceed the maximum or be less than the minimum term of imprisonment provided by law for the public offense of which such person was convicted. . . .

"(d) The governing authority of the reformatory or prison in which such person may be confined, or any board or commission that may be hereafter given authority so to do, shall determine after the expiration of the minimum term of imprisonment has expired, what length of time, if any, such person shall be confined, unless the sentence be sooner terminated by commutation or pardon by the Governor of the state; and if it be determined that such person so sentenced be released before the expiration of the maximum period for which he is sentenced, then such person shall be released at such time as the governing board, commission or other authority may determine.

"(e) The state board of prison directors shall make all necessary rules and regulations to carry out the provisions of this act not inconsistent therewith," etc.

Petitioner's first contention is that the statute is violative of article III, section 1, of the constitution of California, providing for the division of the state government into three separate departments,—legislative, executive, and judicial,—and prohibiting the exercise of the powers of one of these departments by either of the others.

In determining this question and the other questions raised by the petitioner it is necessary to consider the nature and purposes of the indeterminate sentence law. It is generally recognized by the courts and by modern penologists that the purpose of the indeterminate sentence law, like other modern laws in relation to the administration of the criminal law, is to mitigate the punishment which would otherwise be imposed upon the offender. These laws place emphasis upon the reformation of the offender. They seek to make the punishment fit the criminal rather than the crime. They endeavor to put before the prisoner great incentive to well-doing in order that his will to do well should be strengthened and confirmed by the habit of well-doing. Instead of trying to break the will of the offender and make him submissive,

the purpose is to strengthen his will to do right and lessen his temptation to do wrong. If the purpose of the law is to mitigate the punishment, the law is not *ex post facto* unless it can clearly be seen that notwithstanding the beneficence of the law it may result in the individual case in depriving the prisoner of some well-defined right. It has uniformly been held that the indeterminate sentence is in legal effect a sentence for the maximum term. It is on this basis that such sentences have been held to be certain and definite, and therefore not void for uncertainty. (*State* v. *Perkins,* 143 Iowa, 55, 60, [20 Ann. Cas. 1217, 21 L. R. A. (N. S.) 931, 120 N. W. 62], and cases there cited; *State* v. *Tyree,* 70 Kan. 203, 209, [3 Ann. Cas. 1020, 78 Pac. 525]; *Woods* v. *State,* 130 Tenn. 100, 113, [L. R. A. 1915F, 531, 169 S. W. 558]; *Commonwealth* v. *Kalck,* 239 Pa. St. 533, 542, [87 Atl. 61], and cases there cited.) In answering the claim that the authority vested by the indeterminate sentence law in the board of prison directors is a delegation of either legislative or judicial powers to an executive body, it is pointed out that the legislative function is filled by providing the sentence which is to be imposed by the judicial branch upon the determination of the guilt of the offender. This is done by the enactment of the indeterminate sentence law. The judicial branch of the government is intrusted with the function of determining the guilt of the individual and of imposing the sentence provided by law for the offense of which the individual has been found guilty. The actual carrying out of the sentence and the application of the various provisions for ameliorating the same are administrative in character and properly exercised by an administrative body. In answering the contention that the indeterminate sentence law delegated judicial authority to the prison directors, the supreme court of New Jersey said: "The foundation underlying the argument is palpably unsound. The pronouncing of a sentence is, undoubtedly, a judicial act. The punishment which the sentence pronounces comes from the law itself. As Blackstone truly expressed it, under the head of 'Judgment and Its Consequences,' 'the court must pronounce the judgment which the law has annexed to the crime.' " (*State* v. *Dugan,* 87 N. J. L. 603, 609, [89 Atl. 691, 694].) The supreme court of the state of Tennessee in answering the contention that the indeterminate sentence law delegated the

legislative authority to the board of prison directors said: "The powers conferred are in no sense a delegation of legislative authority. The act does not attempt to confer on the board the power to fix the punishment that any given crime shall bear. The act itself, in effect, becomes a part of every judgment, and the board only one of a series of agencies for the execution of the judgment. The legislature declared by previous statutes that the period of confinement, aside from certain crimes not pertinent here, should lie between a maximum and a minimum; the ascertainment of the exact period between the two being left for the jury in each case. Under the present statute the punishment is fixed at a maximum, subject to diminution below that number of years, after the minimum shall have been served, through the operation of a certain discretion vested in the board of prison commissioners. . . . It is impossible to see any element of legislation in the power so to be exercised by the commissioners. There is a striking similarity between the powers here conferred on the board and the authority granted to prison officials under good time statutes, which have generally been held constitutional. It is true the legislature of our state fixes the terms on which the prisoner is entitled to good time, and how much good time shall be allowed each year (Acts 1897, c. 125, sec. 24), and it has been held to be a right which cannot be denied him; but still there may be a deduction from good time earned, for subsequent bad conduct, and there is a discretion in the officers, depending on their judgment as to whether he has obeyed the rules of the prison." For the foregoing reasons the weight of authority is to the effect that indeterminate sentence laws do not violate constitutional provisions such as ours (article III, section 1), providing for a segregation of governmental powers into the three departments—legislative, executive, and judicial. (*Territory of Hawaii* v. *Armstrong*, 22 Hawaii, 526; *Kansas* v. *Page*, 60 Kan. 664, [57 Pac. 514]; *State* v. *Dugan, supra; Woods* v. *State*, 130 Tenn. 100, 113, [L. R. A. 1915F, 531, 169 S. W. 558]; *George* v. *People*, 167 Ill. 647, [47 N. E. 741]; *State* v. *Duff*, 144 Iowa, 142, [138 Am. St. Rep. 269, 24 L. R. A. (N. S.) 625, 122 N. W. 829]; *People* v. *Adams*, 176 N. Y. 351, [98 Am. St. Rep. 675, 63 L. R. A. 406, 68 N. E. 636].) These decisions were rendered before the enactment of the law in California, and this fact should be considered in determining whether the

statute is so clear a violation of this general provision in regard to the division of the government into departments as to require us to hold it to be unconstitutional. For the foregoing reasons we hold that the provisions of section 1168 of the Penal Code do not violate article III, section 1, of the constitution.

Petitioner claims that the indeterminate sentence law (sec. 1168, Pen. Code) is unconstitutional as to him, for the reason that it is *ex post facto*. This contention is based upon the fact that at the time the offense was committed section 1588 of the Penal Code provided for a reduction from the full term of the sentence imposed by the court of certain credits for good behavior during imprisonment, which, in the case of the petitioner, would reduce the maximum term of imprisonment from ten years to six years and five months in the event that he earned full credit for good behavior. The question resolves itself into this: Does the indeterminate sentence law substitute the will and discretion of the board of prison directors as to the time when the prisoner is to be released for the fixed right to a deduction from his term for good conduct? If it substitutes the discretion of the board of prison directors for the statutory right, then we must hold the law *ex post facto,* even though the board of prison directors in the exercise of their discretion might deal more favorably with the prisoner than he would be entitled to under the law giving him definite credits for good conduct. We are satisfied that it was the intention of the legislature in adopting the plan of indeterminate sentence to do away with the legislative plan theretofore in force, by which certain fixed credits for good conduct were given. This law provides that "the governing authority of the . . . prison . . . shall determine . . . what length of time . . . such person shall be confined, unless the sentence be sooner terminated by commutation or pardon by the Governor of the state, and if it be determined that such person so sentenced be released before the expiration of the maximum period for which he is sentenced, then such person shall be released at such time as the governing board, commission, or other authority may determine." If the board of the prison does not fix the length of time which the prisoner is to serve until the time they are ready to grant him his discharge, there is obviously no opportunity for the operation of the good credit system,

for the prisoner is immediately and completely released. On the other hand, if they fix a future time for his release, if the law concerning credit for good conduct applies, then the prisoner will not be released "at such time as the governing board may determine," but at some time before that time has arrived. Subdivision f provides for a release in any event "on serving the maximum punishment provided by law for the offense of which such person was convicted." This law then provides that the prisoner shall serve the maximum term unless before that time the board fixes a shorter time and grants a release. For this reason the law is unconstitutional and *ex post facto* as to the petitioner, whose offense was committed before the enactment of the law. (*Murphy* v. *Commonwealth,* 172 Mass. 264, [70 Am. St. Rep. 266, 43 L. R. A. 154, 52 N. E. 505]; *State* v. *Tyree,* 70 Kan. 203, 209, [3 Ann. Cas. 1020, 78 Pac. 525].) It does not follow, however, that the petitioner is entitled to his discharge, for if, as we hold, the indeterminate sentence law is not applicable to him because *ex post facto,* there remains ample provision for his sentence and imprisonment under the law as it stood at the time of the commission of the crime. Sections 12 and 13 of the Penal Code provide that the term of the imprisonment shall be fixed by the court. Section 1191 et seq. of the Penal Code provides the method and manner of imposing sentence, and section 1588 of the Penal Code provides deductions from the term so fixed by the court of credits for good conduct when earned. None of these sections is expressly repealed by section 1168 of the Penal Code, and they are repealed by implication only so far as section 1168 is inconsistent therewith. As we hold that this latter section does not apply to persons convicted of offenses committed previous to its enactment, because *ex post facto* as to them, it follows that as to such persons there is no repeal by implication of sections 12, 13, and 1588. Having been tried and found guilty of the crime of manslaughter, as appears from the return to the writ, the petitioner is not entitled to an absolute discharge, but must be returned to the superior court of Mendocino County for sentence. (Pen. Code, sec. 1493.) Section 1202 of the Penal Code, providing that a new trial should be granted unless judgment is pronounced within the time limited in section

1191 of the Penal 'Code, has no application to a case of this kind in which a sentence has been imposed.

It is ordered that the warden of the state prison at San Quentin deliver the petitioner to the sheriff of the county of Mendocino, to whose custody he is remanded, for judgment by the superior court upon the conviction.

Shaw, J., Sloss, J., Richards, J., *pro tem.*, Melvin, J., and Angellotti, C. J., concurred.