JUAN VÁZQUEZ SUÁREZ, Petitioner, *v.* FÉLIX R. RIVERA, WARDEN OF THE INSULAR PENITENTIARY, Respondent.

No. 449. Argued June 15, 1949.—Decided July 5, 1949.

*Benjamín Rodríguez Ramón, Santos P. Amadeo, L. Marrero Ledesma, A. Alvarez Linares,* and *Nellie Ortiz Torres,* for petitioner. *Vicente Géigel Polanco, Attorney General, (José Trías Monge, Acting Attorney General,* on the brief) and *J. Rivera Barreras, Fiscal of the Supreme Court,* for respondent.

MR. JUSTICE SNYDER delivered the opinion of the Court.

In 1946, after a jury convicted Juan Vázquez Suárez of voluntary manslaughter, the district court sentenced him to imprisonment of eight years as a minimum and ten years as

a maximum pursuant to Act No. 295, Laws of Puerto Rico, 1946.[1] As the Act was approved after the crime was committed in 1945, we granted Vázquez, petition for a writ of habeas corpus to determine if this sentence violated the *ex post facto* clause of the Organic Act, 48 U.S.C. § 737.

█ We are met at the threshold of the case with two contentions of the warden: (1) the judgment is not null and therefore the alleged defects therein should have been raised on appeal and not by a collateral attack through habeas corpus; (2) in any event, a petition for habeas corpus is premature where as here the prisoner has not yet served that portion of his sentence which is legal. But a sentence which on its face is violative of the *ex post facto* clause is void, not merely irregular, and may therefore be attacked via habeas corpus. If it is void, there is no "legal portion" thereof, although another different legal sentence may thereafter be imposed by the trial court. See *Lindsey* v. *Washington*, 301 U. S. 397; *Gryger* v. *Burke*, 334 U. S. 728. Cf. *Ex Parte Lee*, 171 Pac. 958 (Calif., 1918). *Ex Parte Texidor*, 8 P.R.R. 508, is distinguishable on its facts.

██ On the merits, the petitioner argues first that § 1 of Act No. 295 leaves no discretion in the district court. His

---

[1] Section 1 of Act No. 295 reads as follows: "The indeterminate sentence is hereby established in Puerto Rico; *Provided*, That when the courts sentence a convict to serve a term for a felony not entailing life imprisonment, they shall fix an indeterminate sentence and shall not fix a specific time limit to such sentence, but shall direct the commitment of the convict for a term which shall in no case be less than the minimum term provided by law for the offense committed nor more than the maximum term indicated for said offense; *Provided, further*, That in such cases in which the law does not provide for minimum or maximum terms, the trial court shall fix said minimum or maximum terms."

Section 2 reads in part as follows: "After the convict has served the minimum term fixed by the trial court for the offense committed, he shall remain under the jurisdiction of the Parole Board, which may release him on parole when there is reasonable assurance that the favorable moral rehabilitation aimed at has begun within him; and once he is free on parole he shall remain under its jurisdiction and supervision until the expiration of the maximum term fixed by the trial court for said offense...".

theory is that the trial court must impose an indeterminate sentence with the maximum and minimum as provided in the statute. And he contends that since § 204 of the Penal Code, 1937 ed., establishes a maximum of 10 years for voluntary manslaughter but no minimum, the lower court was required to fix a maximum of ten years and the lowest possible minimum compatible with the purpose of Act No. 295. That lowest possible minimum, according to the petitioner, had to be a term considerably less than 8 years. His point as to the minimum is that it cannot be fixed so high that it will in practical effect be a fixed term and deprive the Parole Board of jurisdiction.

We cannot agree with the petitioner that § 1 of Act No. 295 leaves no discretion in the trial court and requires it automatically to sentence defendants to the maximum and minimum, if any, provided by the Penal Code. On the contrary, the language used by the Legislature enables the trial judge to fix the range of an indeterminate sentence so long as he stays within the minimum, if any, and the maximum fixed by the statute. We have already indicated that we so read the statute. *People* v. *Rodríguez*, 69 P.R.R. 500, 504. And see *State* v. *Superior Court in and for Walla Walla County*, 13 P. 2d 1086 (Wash., 1932); *People* v. *Tyson*, 65 N. E. 2d 796 (Ill., 1946); *People* v. *Reid*, 72 N. E. 2d 812 (Ill., 1947).

A number of states have enacted statutes divesting the trial courts of all discretion in imposing sentences when the Penal Code fixes a maximum and minimum. But thirteen states have statutes like ours vesting discretion in the trial courts to impose indeterminate sentences within the maximum and minimum in the statute. 50 Harv.L.Rev. 677, 681; Orfield, Criminal Procedure From Arrest to Appeal, p. 560. We agree with the petitioner that the purpose of the Legislature in providing for indeterminate sentences may be thwarted by trial judges who fix the minimum term at

slightly less than the maximum. Orfield, *supra*, p. 560. Cf. *Williams* v. *New York*, 337 U. S. 241. But we cannot rewrite our statute to conform it to a policy which the Legislature has not adopted. The Legislature is at liberty to divest the district courts of all discretion in imposing indeterminate sentences; but until it does so, we must enforce the statute as it now reads.

We turn to the fundamental problem in this case—did the indeterminate sentence of 8 to 10 years imposed pursuant to § 1 of Act No. 295, which was enacted after the offense was committed, violate the *ex post facto* clause?

A statute making more onerous the standard of punishment is *ex post facto* as applied to a defendant who is convicted after its approval for a crime committed prior to its passage. *Lindsey* v. *Washington, supra.* Cf. *Ex Parte Castro*, 69 P.R.R. 921. And "the *ex post facto* clause looks to the standard of punishment prescribed by a statute, rather than to the sentence actually imposed." *Lindsey* v. *Washington, supra*, p. 401.

■ When a fixed term statute is superseded by an indeterminate sentence statute, the *ex post facto* clause may or may not bar application of the statute to crimes committed prior to enactment of the latter. As in other situations, the test is whether more onerous punishment may be imposed under the wording of the specific statute. 2 Sutherland, Statutory Construction, § 2309, pp. 171–2, and cases cited; Rottschaefer on Constitutional Law, pp. 773–74, and cases cited. Cf. *State* v. *Tyree*, 77 Pac. 290 (Kans., 1904); *State* v. *Fisher*, 27 S.E. 2d 581 (W. Va., 1943).

■ Act No. 295 does not permit a more burdensome sentence as such. In the instant case, prior to passage of Act No. 295, the trial court could have imposed any sentence it chose not exceeding ten years, pursuant to §§ 28 and 204 of the Penal Code. If we had agreed with the contention of the petitioner that the maximum had to be the maximum

fixed by the statute, there would be considerable force in his argument that application to him of such a statute would make the punishment more onerous and thereby violate the *ex post facto* clause. That is because previously the maximum was optional, whereas now it would be mandatory. *Lindsey* v. *Washington, supra; Ex Parte Melosevich,* 133 Pac. 57 (Nev., 1913); *Application of Nasti,* 9 N.Y.S. 2d 327 (N.Y., 1939). But, as we have seen, under Act No. 295 the unfettered discretion vested in the district court pursuant to § 204 of the Penal Code to fix the maximum sentence has remained unaltered. The punishment that could be fixed under Act No. 295 therefore could not be more onerous than under the previous law. It is true that, after passage of Act No. 295, the trial court was required to impose both a minimum and a maximum. But in the absence of a requirement that imposition of the maximum fixed in the statute was mandatory, the additional requirement that a minimum shall also be fixed by the trial court could not result in punishment more onerous than that provided by previous law. *Commonwealth* v. *Kalck,* 87 Atl. 61 (Pa., 1913).

■ If the petitioner observes good conduct while imprisoned, ten days per month will be deducted from the maximum period provided in his sentence and he will be entitled to release after serving six years and eight months. Section 1, Act No. 180, Laws of Puerto Rico, 1943; *Echeandía* v. *Saldaña,* 61 P.R.R. 771; *Echeandía* v. *Alvarado,* 64 P.R.R. 523; *Orme* v. *Rogers,* 260 Pac. 199 (Ariz., 1927); *Ex Parte Lee, supra,* p. 959; *Story* v. *Rives,* 97 F. 2d 182, 187 (C.C.A., D.C., 1938). The petition points out that under those circumstances he will never become eligible for parole, in view of the requirement of § 2 of Act No. 295 that a prisoner must serve the minimum term fixed in the sentence before he is eligible for parole. But this is due not to any defect in the sentence but to two circumstances: (1) the petitioner's prospective good conduct; (2) the narrow, but valid, range of

the sentence imposed by the lower court. We fail to see how those facts require us to hold that Act No. 295 is an *ex post facto* law as applied to the petitioner. *Clark* v. *State*, 204 Pac. 1032 (Ariz., 1922). For the same reason, we cannot hold that the sentence is null on the ground that in practical effect this is a sentence for a fixed term of 6 years and 8 months rather than for an indeterminate sentence, provided the petitioner observes good conduct.

Perhaps it is desirable for the Parole Board to have jurisdiction to act in every case. But so long as the Legislature permits the trial courts to fix a narrow range in imposing indeterminate sentences and continues in effect the system of reductions for good behaviour, cases like this are bound to occur. The remedy, if any is needed, is in more appropriate sentences by the trial courts or legislation, not a habeas corpus proceeding based on the *ex post facto* clause.

██ The only remaining problem is the contention of the petitioner that under § 6-C of the Act of March 14, 1907, as amended by Act No. 180, Laws of Puerto Rico, 1943, he had the right to petition the Parole Board for a parole after serving one-fourth of his term, whereas under § 2 of Act No. 295, Laws of Puerto Rico, 1946, he is required to serve the minimum term of his sentence before he becomes eligible for parole. However, this contention is not an attack on the validity of the sentence as such. It therefore cannot be raised by habeas corpus. In addition, this contention is premature. The petitioner began to serve his sentence on March 16, 1948. After he serves one-fourth of his term, if the Parole Board refuses to consider him as eligible for parole, the petitioner will be entitled to raise the issue that § 2 of Act No. 295 is an *ex post facto* law as applied to him because it withdraws the privilege under previous law to apply for parole after service of one-fourth of his term. But that contention cannot be raised until the petitioner has actually served one-fourth of his maximum term. We cannot pre-

dicate our decisions on suppositious eventualities. *Echeandía* v. *Saldaña, supra,* p. 776.

In view of the reliance of the petitioner thereon, we have examined Act No. 176, Laws of Puerto Rico, 1949, amending Act No. 295 of 1946, but find that it has no effect on this case.

The writ of habeas corpus will be discharged.