[No. F008259. Fifth Dist. Feb. 24, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
ALFONSO FLORES, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

\* Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II.

**COUNSEL**

Joseph E. Gerbac, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, W. Scott Thorpe and Clayton S. Tanaka, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BALLANTYNE, J.—**

### STATEMENT OF THE CASE

On March 30, 1981, defendant, Alfonso Flores, was convicted of robbery, attempted robbery, first degree murder with special circumstances and the use of a firearm during the commission of each offense. The defendant was sent to the California Youth Authority (CYA or YA) for a diagnostic evaluation. The court sentenced him to prison for life without possibility of parole, plus a two-year firearm enhancement for the murder, and stayed the sentences on the remaining counts.

Defendant appealed and this court, on March 15, 1983, filed its opinion affirming the conviction but ordering that the case be remanded for resentencing because defendant was a juvenile (17 years old) when he committed the offense and thus could not be charged with special circumstances and sentenced to life in prison without possibility of parole. (*People* v. *Spears* (1983) 33 Cal.3d 279 [188 Cal.Rptr. 454, 655 P.2d 1289].)

The defendant was not returned to superior court for resentencing until December 12, 1986, over three and one-half years after the opinion was filed by this court ordering his resentencing. The trial court ordered that the matter be referred to the probation officer for a recommendation. At his resentencing defendant made a motion for new trial based on this lengthy

delay. The motion was denied. A supplemental probation report was filed which contained a procedural history, an analysis of defendant's conduct credits and a recommended sentence. The report contained nothing about defendant's behavior while incarcerated.

At his sentencing hearing the defendant requested that the court reconsider his amenability to the YA. The court refused and resentenced defendant to prison. Defendant was given a 25 years to life term and a 2-year consecutive gun use enhancement for the murder. The remaining terms were stayed pursuant to Penal Code section 654.

DISCUSSION

I.

### IS THE DEFENDANT ENTITLED TO THE PREPARATION OF A NEW AMENABILITY REPORT BY THE CALIFORNIA YOUTH AUTHORITY?

After his conviction defendant was referred to CYA for an amenability study. The staff concluded that defendant was not amenable to the training and treatment offered by the YA. They went on to note that defendant was not eligible for treatment in any event because he was convicted of a public offense that could result in life imprisonment.

At his original sentencing hearing on July 21, 1981, both parties and the court agreed that the court had no discretion to send the defendant to CYA and he was then sentenced to prison for life without possibility of parole.

At his subsequent resentencing hearing on January 15, 1987, the defendant requested that the court consider a CYA commitment. The court said this contention was completely without merit because defendant had previously been referred to CYA. The court did not order the preparation of a new report nor even consider the possibility of CYA commitment. Defendant was sentenced to prison for 25 years to life plus a 2-year gun use enhancement.

■ ". . .[U]nder the terms of [Welfare and Institutions Code] section 707.2, before the sentencing court may order a minor such as defendant committed to state prison, the court must (1) remand the minor to YA for its evaluation and report, (2) read and consider the YA report, and (3) find that the minor is not a suitable subject for commitment to YA. . . .

"The statutory language is not reasonably susceptible to the interpretation that the sentencing court must accept YA's recommendation on the

subject of suitability. As stated in a recent case, 'It will be observed that the code section [707.2] does not, by its terms, remove sentencing discretion from the trial court and vest it in the Youth Authority. Rather, it requires only that a Youth Authority diagnostic study be prepared and considered by the trial court before it sentences a minor to state prison. Specifically section 707.2 does not direct the court to follow the Youth Authority recommendation nor does it preclude the trial court from considering a probation report.' " (*People* v. *Carl B.* (1979) 24 Cal.3d 212, 217-218 [155 Cal.Rptr. 189, 594 P.2d 14].)[1]

■ In the instant case neither the court at the original sentencing hearing nor the court at resentencing considered defendant's amenability to CYA. The sentencing discretion vested in the trial court was not exercised. This was error. The court in the instant case should have considered defendant's amenability to CYA and should have done so with the benefit of a new report.

When a case is remanded for resentencing and the court has discretion to alter the length of the defendant's sentence, he is entitled to a new probation report including the information regarding his behavior while incarcerated. (*People* v. *Brady* (1984) 162 Cal.App.3d 1, 7 [208 Cal.Rptr. 21].)[2] The same should be true of a defendant remanded for resentencing who is eligible for commitment to the YA. In order to intelligently exercise its discretion, the court should have before it updated information regarding defendant's behavior while incarcerated during the pendency of his appeal. Great insight could be obtained from an evaluation of a defendant's behavior while incarcerated. It is possible that the defendant may have performed differently than previously expected and/or may have altered certain behavior patterns which might change an amenability recommendation and determination.

Welfare and Institutions Code section 707.2, the statute governing YA amenability referrals, states: "Prior to sentence, the court of criminal jurisdiction may remand the minor to the custody of the Youth Authority for not to exceed 90 days for the purpose of evaluation and report concern-

---

[1] We note that Welfare and Institutions Code section 707.2 was amended in 1982 "in response to the holding in *Carl B.* that 'if the YA recommends that a minor be committed to its jurisdiction, the court must give great weight to that recommendation absent substantial countervailing considerations.' (*Ibid.*) As amended, therefore, section 707.2 only requires that the trial court consider a CYA amenability recommendation as one of 'several primary considerations in the court's determination of the appropriate disposition of the minor.' " (*People* v. *Martinez* (1987) 191 Cal.App.3d 1372, 1388 [237 Cal.Rptr. 219].)

[2] California Rules of Court, rule 419, lists things which should be included in a probation report. Subdivision (a)(7) requires the report to contain collateral information regarding defendant's behavior during any period of presentence incarceration.

ing his amenability to training and treatment offered by the Youth Authority. No minor who was under the age of 18 years when he committed any criminal offense and who has been found not a fit and proper subject to be dealt with under the juvenile court law shall be sentenced to the state prison unless he has first been remanded to the custody of the Youth Authority for evaluation and report pursuant to this section.

"The need to protect society, the nature and seriousness of the offense, the interests of justice, the suitability of the minor to the training and treatment offered by the Youth Authority, and the needs of the minor shall be the primary considerations in the court's determination of the appropriate disposition for the minor." The statute forbids a state prison commitment *without* the study.

Defendant here has already had one YA amenability study, prior to his first sentencing. That study was over five and one-half years old by the time he was resentenced. The question remains whether, on remand, the sentencing court was required to "start from scratch," or whether it could rely in part on sentencing decisions and procedures that occurred at the original sentencing hearing more than five and one-half years before.

Several cases have held that, on a remand for resentencing, "the trial court [is] entitled to reconsider its entire sentencing scheme . . . ." (*People v. Savala* (1983) 147 Cal.App.3d 63, 70 [195 Cal.Rptr. 193], disapproved on other grounds in *People v. Foley* (1985) 170 Cal.App.3d 1039, 1044-1050 [216 Cal.Rptr. 865]; *People v. Burns* (1984) 158 Cal.App.3d 1178, 1184 [205 Cal.Rptr. 356]; *In re Ditsch* (1984) 162 Cal.App.3d 578, 582 [209 Cal.Rptr. 12].) There is obviously a difference between being *entitled* to reconsider and being *obligated* to do so. In *Van Velzer v. Superior Court* (1984) 152 Cal.App.3d 742, 744 [199 Cal.Rptr. 695], the court stated that, as a general rule, the effect of an appellate court reversing a sentence is "to restore [the appellant] to his original position as if he had never been sentenced . . . . Thus, upon resentencing, [the appellant] is entitled to all the normal procedures and rights available at the time judgment is pronounced [citations]." In addition, by analogy, it should be noted that, on reversal of a conviction, the status of the case on remand is the same as though no trial had occurred. (*People v. Clark* (1965) 62 Cal.2d 870, 886 [44 Cal.Rptr. 784, 402 P.2d 856].)

In *People v. Thornton* (1985) 167 Cal.App.3d 72 [212 Cal.Rptr. 916], this court suggested that reliance by a resentencing court on decisions or conclusions reached at the prior sentencing hearing may be improper. In *Thornton,* the judge failed to state reasons for two sentencing choices at the resentencing. This court stated: "We may infer that the judge meant to

incorporate as his reasons the two aggravating factors which he had cited at appellant's original sentencing and which had passed muster on appellant's first appeal. We are aware of no authority which would permit such a procedure." (*Id.* at p. 75.) The court declined to reach the issue, however, finding "a more basic flaw" in the resentencing on which it relied in remanding for a third sentencing hearing. (*Ibid.*)

*People* v. *Chi Ko Wong* (1976) 18 Cal.3d 698 [135 Cal.Rptr. 392, 557 P.2d 976] held in part that a juvenile court order certifying a defendant for criminal proceedings cannot be considered on appeal from an ensuing conviction. (*Id.* at p. 707.) In a footnote, the Supreme Court stated: "Under the spirit of the Juvenile Court Law it is reasonable to conclude that the juvenile court is entitled to consider all updated information, as in its position of *in loco parentis* it should not be forced to disregard recent relevant information on the issue of amenability to treatment." (*Id.* at p. 712, fn. 10.) Although appellant had been found not to be a fit and proper subject to be dealt with under the Juvenile Court Law (Pen.Code, § 707), he is entitled to the protection of that law, at least through sentencing. (Pen.Code, § 707.2.) The fact that he faced a criminal and not a juvenile court should not in itself make the policy expressed in *Chi Ko Wong, supra,* inapplicable to this case. The court below should have made a determination at the resentencing hearing whether defendant should be committed to the YA or sent to prison, and could only have made an informed decision with an updated amenability study before it.

## II.*

. . . . . . . . . . . . . . . . . . . . . .

## III.

### Is Defendant Entitled to a New Trial Pursuant to Penal Code Sections 1191 and 1202?

Penal Code section 1191 provides: "In the superior court, after a plea, finding or verdict of guilty, or after a finding or verdict against the defendant on a plea of a former conviction or acquittal, or once in jeopardy, the court must appoint a time for pronouncing judgment, which must be within 28 days after the verdict, finding or plea of guilty, during which time the court shall refer the case to the probation officer for a report if eligible for probation and pursuant to Section 1203; provided, however, that the court

---

* See footnote *ante,* page 1156.

may extend the time not more than 10 days for the purpose of hearing or determining any motion for a new trial, or in arrest of judgment, and may further extend the time until the probation officer's report is received and until any proceedings for granting or denying probation have been disposed of. If in the opinion of the court there is a reasonable ground for believing a defendant insane, the court may extend the time for pronouncing sentence until the question of insanity has been heard and determined, as provided in this code. If the court orders defendant placed in a diagnostic facility pursuant to Section 1203.03, the time otherwise allowed by this section for pronouncing judgment is extended by a period equal to (1) the number of days which elapse between the date of such order and the date on which notice is received from the Director of Corrections advising whether or not the Department of Corrections will receive defendant in such facility, and (2) if the director notifies the court that it will receive the defendant, the time which elapses until his return to the court from the facility."

Penal Code section 1202 provides: "If no sufficient cause is alleged or appears to the court at the time fixed for pronouncing judgment, as provided in Section 1191 of this code, why judgment should not be pronounced, it must thereupon be rendered; and if not rendered or pronounced within the time so fixed or to which it is continued under the provisions of Section 1191 of this code, then the defendant shall be entitled to a new trial. If the court shall refuse to hear a defendant's motion for a new trial or when made shall neglect to determine such motion before pronouncing judgment or the making of an order granting probation, then the defendant shall be entitled to a new trial."

Defendant asserts that he should have been granted a new trial in accordance with Penal Code sections 1191 and 1202. Defendant contends that the delay in this case resulted in a miscarriage of justice. Defendant's argument is as follows: "Appellant languished for years in the worst section of the most notorious prison in California, if not the whole United States. He was attacked on more than one occasion and lost one of his eyes as a result. He was placed in protective custody and not allowed to participate in any work programs due to concerns for his safety. This resulted in him not being able to earn work time credits which can cause him to remain in prison longer than he would otherwise.

"Because of his protective custody status, he sat in a cell all day. During this time he became distraught and depressed. He 'was told that (he) should be transferred to the California Medical Facility at Vacaville where he would be treated for (his) depression and receive better continuing care for (his) eye. He was told that due to his status as a lifer (without possibility of parole) this transfer would not occur. . . .'"

Defendant also argues that this court should grant the motion if for no other reason than for this court to get the attention of the trial courts so that our orders will not be ignored.

Respondent asserts, without legal authority or argument, that the language of Penal Code section 1191 makes it inapplicable to resentence after appellate review. Assuming, arguendo, that these code sections apply, respondent contends that defendant has failed to demonstrate a miscarriage of justice.

Defendant relies on *In re Crow* (1971) 4 Cal.3d 613 [94 Cal.Rptr. 254, 483 P.2d 1206]. In *Crow,* the defendant was convicted of violating Penal Code section 288. He was committed to a state hospital and his judgment and sentence were suspended. He escaped from the hospital, was captured and was sentenced to prison on the escape charge. While so confined, defendant requested that he be sentenced for his original conviction. He served two and one-half years in custody before he was returned for the conclusion of the original conviction and was sentenced to state prison. Defendant filed a writ in the Sacramento Superior Court claiming the two and one-half year delay denied him his right to a speedy trial. The court granted relief and ruled that the petitioner was entitled to a new trial pursuant to Penal Code section 1202. The Sacramento Superior Court ordered defendant into the custody of the Los Angeles Superior Court. The People did not appeal this ruling. The Los Angeles Superior Court dismissed the Sacramento court's order and remanded defendant to prison. (*Id*. at pp. 616-618.) Defendant appealed this order.

The Supreme Court did not address the content of the Sacramento court's order and even assumed that the court exceeded its jurisdiction. But, the Supreme Court held that the order of the Sacramento court must be followed because the People failed to appeal. Thus, regardless of any possible flaws in its decision, the judgment became res judicata. (*Id*. at pp. 621-622.)

In *Crow,* the Supreme Court did not address the merits of defendant's original argument that he was entitled to a new trial due to the two and one-half year delay and pursuant to Penal Code section 1202. Its decision was based solely on procedural aspects of the case and not on the merits of the issue now faced by this court. Furthermore, the defendant in *Crow* was in a different position than the defendant in the instant case. Crow was appearing for his sentence to be passed for the first time; he was not being resentenced. Hence, *Crow* is clearly inapposite to the instant case.

In *People* v. *Robarge* (1953) 41 Cal.2d 628 [262 P.2d 14], the Supreme Court agreed with the defendant that the trial court had improperly re-

viewed his motion for new trial and made the following ruling: "The judgment and the order denying the motion for a new trial are vacated with directions to again hear and determine the motion for a new trial in accordance with the rules hereinabove stated. If the trial court determines that a new trial should be granted, defendant will be entitled to a trial on the merits, but if it is determined that the new trial should be denied, then the trial court shall again pronounce judgment upon defendant. (See Pen. Code, §§ 1168, 1191, 1193, 1200, 1202, 1207 and 1213.) The time limits provided for in the sections just cited shall run from the filing of the remittitur in the superior court." (*Id*. at p. 635.)

In *People* v. *Cheffen* (1969) 2 Cal.App.3d 638 [82 Cal.Rptr. 658], the trial court pronounced judgment on only two of the five counts of which defendant was convicted. (*Id*. at p. 641.) The appellate court reversed the two counts on which the court had pronounced sentence and remanded the case to the trial court for judgment on the remaining three convictions. (*Id*. at p. 643.) In doing so, the court stated, "Section 1202 has no application in a case in which sentence *has* been imposed, even though that sentence is a void sentence." (*Id*. at p. 642.)

In *In re Lee* (1918) 177 Cal. 690 [171 P. 958], the trial court pronounced an unlawful sentence on the defendant. (*Id*. at p. 696.) The Supreme Court held that the case must be remanded to the trial court for resentencing. It stated, "Section 1202 of the Penal Code, providing that a new trial should be granted unless judgment is pronounced within the time limited in section 1191 of the Penal Code, has no application to a case of this kind in which a sentence has been imposed." (*Id*. at pp. 696-697.) *Lee* was followed in *People* v. *Scott* (1918) 39 Cal.App. 128, 131 [178 P. 298].

In our opinion the *Lee* case contains the correct interpretation of section 1191. When this court affirms the conviction, it is not a "plea, finding or verdict of guilty." It is an affirmance of the plea, finding or verdict. Thus, Penal Code sections 1191 and 1202 do not apply to a remand for resentencing after affirmance of a conviction by this court. Defendant is not entitled to a new trial.

### DISPOSITION

The case is remanded to the trial court. The court is ordered to direct the preparation of an updated probation report and a new amenability study

and report from the California Youth Authority. The court must then exercise its discretion pursuant to Welfare and Institutions Code section 707.2.

Woolpert, Acting P. J., and Hamlin, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 5, 1988.