[No. F012073. Fifth Dist. Sept. 21, 1989.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF TULARE COUNTY, Respondent;
ALFONSO FLORES, Real Party in Interest.

[Opinion certified for partial publication.*]

---

* Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts C and D of the Discussion.

COUNSEL

John K. Van de Kamp, Attorney General, Arnold O. Overoye, Acting Chief Assistant Attorney General, W. Scott Thorpe, Acting Assistant Attorney General, and Clayton S. Tanaka, Deputy Attorney General, for Petitioner.

No appearance for Respondent.

Michael Cross for Real Party in Interest.

OPINION

MARTIN, Acting P. J.—The People petition for a writ of mandamus to compel the Tulare County Superior Court to vacate its April 19, 1989, order dismissing real party's murder case.

On January 27, 1981, the Tulare County District Attorney filed an information in superior court charging real party in interest as follows: count I— murder (Pen. Code, § 187)[1] with use of a firearm (§ 12022.5) and one felony-murder special circumstance (§ 190.2, subd. (a)(17)); count II—robbery (§ 211) with use of a firearm (§ 12022.5); and count III—attempted robbery (§§ 211, 664) with use of a firearm (§ 12022.5).

On March 22, 1981, jury trial commenced in superior court. On March 30, 1981, the jury rendered its verdict, finding real party guilty of murder, finding the special circumstance and the firearm use allegations true, and

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

finding real party guilty of robbery and attempted robbery while personally armed.

On April 30, 1981, the superior court ordered real party, then a minor, placed in the California Youth Authority (CYA) Diagnostic Center for evaluation. On July 21, 1981, the superior court sentenced real party to state prison as follows: count I—life without possibility of parole plus a consecutive two-year enhancement; count II—the median term of two years plus a two-year enhancement; and count III—the median term of three years plus a two-year enhancement. Sentences on counts II and III were stayed.

On March 15, 1983, this court affirmed real party's conviction but remanded the matter to the trial court for resentencing. We held the trial court erroneously sentenced real party to a term of life imprisonment without possibility of parole contrary to *People* v. *Spears* (1983) 33 Cal.3d 279 [188 Cal.Rptr. 454, 655 P.2d 1289].

On January 15, 1987, the superior court denied real party's oral and written motions for new trial. The trial court then sentenced real party to a term of 25 years to life plus a consecutive 2-year enhancement. The sentences on counts II and III were stayed and then vacated on January 20, 1987.

Real party filed a timely notice of appeal from the denial of the written new trial motion and from sentencing. ■■■■ On February 24, 1988, this court affirmed real party's conviction but again remanded the case and directed the trial court to obtain an updated probation report and a new CYA amenability study and report and to then exercise its discretion pursuant to Welfare and Institutions Code section 707.2.[2] (*People* v. *Flores* (1988) 198 Cal.App.3d 1156 [244 Cal.Rptr. 322].)[3]

[2] Welfare and Institutions Code section 707.2 states in relevant part: "Prior to sentence, the court of criminal jurisdiction may remand the minor to the custody of the Youth Authority for not to exceed 90 days for the purpose of evaluation and report concerning his amenability to training and treatment offered by the Youth Authority. No minor who was under the age of 18 years when he committed any criminal offense and who has been found not a fit and proper subject to be dealt with under the juvenile court law shall be sentenced to the state prison unless he has first been remanded to the custody of the Youth Authority for evaluation and report pursuant to this section.

"The need to protect society, the nature and seriousness of the offense, the interests of justice, the suitability of the minor to the training and treatment offered by the Youth Authority, and the needs of the minor shall be the primary considerations in the court's determination of the appropriate disposition for the minor."

[3] A 25-years-to-life sentence for first degree murder is an indeterminate commitment permitting CYA placement pursuant to Welfare and Institutions Code section 1731.5. (*People* v. *Spears, supra,* 33 Cal.3d 279, 283; *In re Jeanice D.* (1980) 28 Cal.3d 210, 221 [168 Cal.Rptr. 455, 617 P.2d 1087].)

On May 23, 1988, and on July 5, 1988, the Tulare County Superior Court ordered real party to be returned to CYA for current and retroactive amenability determination. The study indicated it was unlikely real party would have been found amenable for treatment had he been referred to CYA in 1983. On December 23, 1988, and on March 23, 1989, the superior court received current and supplemental probation officer's reports. Both reports recommended the return of real party to state prison.

On March 20, 1989, real party filed a motion to dismiss the case pursuant to section 1385. On April 19, 1989, the Tulare County Superior Court granted real party's motion. However, the trial court stayed its dismissal order until April 28, 1989.

On April 27, 1989, the People filed a petition praying for a peremptory writ of mandamus directing the superior court to vacate its April 19, 1989, dismissal order or that an alternative writ issue, ordering the superior court to show cause why the relief should not be granted. The People further applied for an order staying the release of real party from custody until resolution of the issues pending before this court.

On April 28, 1989, this court stayed the April 19, 1989, dismissal order until issuance of a further order vacating the stay.

On May 12, 1989, real party filed opposition to petition for writ of mandamus.

On June 1, 1989, the clerk of this court filed an order to show cause why the relief prayed for should not be granted and directing the April 28, 1989, stay order remain in effect until determination of the petition or further order. Real party filed a timely return to petition for writ of mandamus.

FACTS

The statement of facts relating to the offense is taken verbatim from the unpublished opinion filed in real party's initial appeal (*People v. Flores* (Mar. 15, 1983) 5 Crim. No. 5731): "About 8:30 p.m. or 9 p.m. on Saturday, August 9, 1980, 14-year-old Angel Segura saw appellant . . . standing outside the 8-10 Market on the corner of Leggett and East Orange in Porterville. Angel knew appellant as a friend of his brother. Angel and appellant talked for awhile. Appellant showed Angel a shotgun which he had in the sleeve of his jacket.

"That same evening, Manuel Villarreal-Martinez was visiting with friends at East Orange Street in Porterville, California. While he was there, Richard Patron Guerrero stopped by. Martinez had only been acquainted with Guerrero a brief time. Guerrero invited Martinez to walk with him to the 8-10 Market on the corner of East Orange and Leggett. Martinez agreed. The two men walked the short distance to the store. Martinez waited outside the store while Guerrero bought a can of Budweiser. The men headed back down East Orange.

"Martinez noticed two men approaching from the opposite direction. One of them (appellant) carried a shotgun. Appellant told Martinez and Guerrero to stop or he would shoot. Martinez stopped. Appellant's companion, Tony Rosa, searched Martinez and took three one hundred peso notes from his pocket.

"Guerrero had ignored appellant's order and walked away. Appellant pointed the gun in Guerrero's direction and fired one shot. The shotgun blast struck Guerrero in the left side.

"Guerrero stumbled forward a few feet and collapsed in a nearby driveway. He died of his wounds a short time later.

"A little later that evening, appellant was at a party. Appellant told his friend Danny Segura, 'Hey, Square, I just shot a "wetto" man' (wetback)."

## DISCUSSION

### *Did the Trial Court Improperly Dismiss the Instant Case?*

Petitioner contends the trial court improperly dismissed the instant case. Petitioner specifically alleges (1) the trial court exceeded its jurisdiction in dismissing the case after this court affirmed real party's conviction and remanded the matter for further sentencing proceedings consistent with its judgment; (2) in dismissing the case, the trial court relied upon case authorities which are factually distinguishable from the instant matter; (3) the real party has only served a portion of his proper sentence of 27 years to life; and (4) delay in preparation of the amenability study did not prejudice real party since he was not amenable to treatment by CYA.

The trial court stated at the April 19, 1989, hearing on real party's motion to dismiss: "[I]t is awfully hard for myself to isolate the incident of statutory prohibition for the CYA commitment with life without the possibility of parole, and I am sure that the persons who did the amenability studies had the same problem.

"And I know myself when I read probation reports every morning for various sentencing procedures, if I see a statutory prohibition, that certainly makes my discretionary moves a lot easier. And I am certain that applies to the clinical persons that examine defendants for amenability.

"I am also well aware of the fact of the heinous circumstances surrounding the original crime for which the Defendant was found guilty. But I can't isolate that circumstance in and of itself when it comes to having the case remanded on two occasions for this court to look at the factors, look at the present, look at the past, and make a decision.

"Contrary to the reports of amenability as to what would have in all probability quote unquote occurred, probability still is uncertain that some judge would have had made a discretionary move.

"Contrary to that conclusion, based upon the facts of the intervening six years and his current educational-psychological-emotional status, I do make the finding, discretionarily, that he would have been amenable to the CYA treatment facilities [because] that is the very purpose of CYA. Regardless of the type of crime, if he's amenable and he's in the age group, he should have been sent there.

"Now, I am faced with a situation. I have taken myself back in time to 1981 . . . and found that he would have been amenable in 1981 and 1983. I have a convicted murderer who originally received life without the possibility of parole. And, because of that circumstance, he never got appropriate good time/work time credits or day for day credits.

"My calculations are approximately what your calculations were. I figured out that if he received appropriate credits, although they were never calculated [because] he wasn't eligible, it would have been 16 years and 2 months of the 27 years to life commitment. Compounding that factor is that for two and a half years he's been infraction-free.

"Now, I realize that the Morrison report strongly urges this court to consider that the reason that he's infraction-free is because he's been in a segregated community. That may be so. However, other factors of his increased intelligence, et cetera, also have to be weighed along with his lack of any criminal conduct in the last two and a half years. And I am directed by the appellate court to consider these circumstances.

". . . . . . . . . . . . . . . . . . . .

"I have a situation here that no matter what Mr. Flores did, because of the, number one, incorrect sentencing as far as life without the possibility of

parole; number two, the lapse of time that occurred during the appellate process on the remittitur; and, number three, the circumstance of him having been committed to San Quentin at the age of 17, all of those factors, nothing can change that now. He can't do anything except go back to state prison for 27 to life. And if he goes back to state prison for 27 to life, what happened to his rights that he should have had in '81 and '83?

"Again, I don't like doing this, Miss Reed [deputy district attorney], and I know that's why you interrupted me because Mr. Cross [defense counsel] and yourself both picked up on my comments. But pursuant to Wilson versus Reagan and In re Pfeiffer I find that the Defendant's rights have been violated; that they are of constitutional dimension and cannot be corrected by any motions of this court. And the motion to dismiss this case is granted."

## A. Jurisdiction to Dismiss

Petitioner initially contends the trial court exceeded its jurisdiction by dismissing the case after this court remanded for the "narrow purpose" of further sentencing proceedings. Real party responds there is no factual foundation for petitioner's assertion: "There is no citation [to the record] because there are no such orders and instructions in the opinion. This court clearly stated its orders and instructions in the last paragraph of its opinion, which was headed by the word, ['Disposition.'] This court ordered respondent to direct the preparation of an updated probation report and a new amenability study and then ordered respondent to exercise its discretion pursuant to Welfare and Institutions Code section 707.2 . . . . Nowhere in the opinion does this court refer to resentencing or to the matters about which petitioner writes."

Section 1385 states in relevant part: "(a) The judge or magistrate may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed. The reasons for the dismissal must be set forth in an order entered upon the minutes. No dismissal shall be made for any cause which would be ground of demurrer to the accusatory pleading."

Section 1385 requires the reasons for dismissal be set forth in the minutes. Oral statements are not the same as court minutes. Minutes and oral pronouncements of the court, even if they are reduced to writing by the reporter, are different things. If the reasons are not set forth in the minutes, the order dismissing may not be considered a dismissal under section 1385. If valid reasons are expressed in the reporter's transcript but do not appear in the minutes, the mandatory requirements have not been met. (*People* v.

*Andrade* (1978) 86 Cal.App.3d 963, 974-975 [150 Cal.Rptr. 662].) Moreover, a specification of reasons is insufficient when it is couched in conclusory language and fails to set out the factual basis for the conclusions reached. (*People* v. *McAlonan* (1972) 22 Cal.App.3d 982, 986 [99 Cal.Rptr. 733].) Failure to state the reasons in the minutes renders a dismissal under section 1385 invalid. (*People* v. *Orin* (1975) 13 Cal.3d 937, 943 [120 Cal.Rptr. 65, 533 P.2d 193].) ▇ The April 19, 1989, minute order in the instant case stated: "The court finds that the defendant would have been amenable to treatment at the California Youth Authority and should have been placed in said facility. . . . The court further finds that the defendant's rights have been violated, they are of constitutional dimension and cannot be corrected by any motions of this court." The instant minute order is couched in conclusory language which fails to set out the factual basis upon which the conclusions were reached. In such a situation, the appropriate remedy is to grant the petition for writ of mandate to compel the preparation of a sufficient statement of reasons in the minutes.

▇ Dismissal in the furtherance of justice is a matter within the court's exclusive discretion. (*People* v. *Johnson* (1966) 247 Cal.App.2d 331, 333 [55 Cal.Rptr. 450].) Thus, the court may order dismissal over the prosecution's objection. The discretion of a trial judge to dismiss a criminal action under section 1385 may be exercised at any time during the trial, including after a jury verdict of guilty. (*People* v. *Superior Court* (*Howard*) (1968) 69 Cal.2d 491, 501-502 [72 Cal.Rptr. 330, 446 P.2d 138].) Section 1385 authorizes the court to dismiss in furtherance of justice in any circumstance in which the legislative body has not clearly manifested a contrary intent. (*Id.* at pp. 503-505.) A judgment of dismissal is not an adjudication the charged crime was not committed. Rather, the dismissal operates to free the criminal defendant from further prosecution and punishment for that crime. The defendant stands as if he had never been prosecuted for the charged offense. (*People* v. *Simpson* (1944) 66 Cal.App.2d 319, 329 [152 P.2d 339].)

In analyzing the jurisdiction of the court to dismiss, both petitioner and real party ignore a fundamental point. ▇ A criminal prosecution may be dismissed in superior court and the defendant may be discharged on several statutory grounds, including those set forth in section 1385. However, that section does *not* authorize the defendant to make a motion to dismiss in furtherance of justice. (*People* v. *Ritchie* (1971) 17 Cal.App.3d 1098, 1104 [95 Cal.Rptr. 462].) To recognize such motion and order would judicially enlarge the scope of section 1385 if the dismissal were intended in furtherance of justice. The Legislature limited the right to initiate the use of section 1385 to the People and to the court. Granting a defendant's motion cannot be properly characterized as a dismissal of charges in furtherance of

justice pursuant to that section. (*People* v. *Andrade, supra,* 86 Cal.App.3d 963, 973-974.)

While a defendant can informally suggest a court consider the dismissal of charges against him, section 1385 does not provide for a formal defense motion to accomplish the same result. (*People* v. *Smith* (1975) 53 Cal.App.3d 655, 657-658 [126 Cal.Rptr. 195].) In other words, a defendant may ask the trial court to exercise its discretion under section 1385. One appellate court has treated a defense motion under section 1385 as such a request. (*People* v. *Lopez* (1988) 198 Cal.App.3d 135, 140 [243 Cal.Rptr. 590].) ▮ In the instant case, real party formally initiated the motion to dismiss and the court granted his motion. The reporter's transcript of the hearing below does not show respondent court expressly exercised its authority under section 1385 and specifically based its order upon that authority. The minutes of April 19, 1989, simply reflect the court granted real party's motion to dismiss. The minutes say nothing of the court doing so on its own motion. Since the April 19 order was not made upon the court's own motion, the court's action may not properly be characterized as a dismissal in furtherance of justice under section 1385 and the petition for writ of mandamus will be granted.

## B. CASE AUTHORITIES

Petitioner next contends the authorities cited in support of the trial court's order are factually distinguishable from the instant case.[4]

In *Wilson* v. *Reagan* (9th Cir. 1965) 354 F.2d 45, appellee was convicted of armed robbery and a California court sentenced him to state prison. At the time of the August 1, 1958, offense and arrest, appellee was 17 years of

---

[4]The California Supreme Court identified the basic issue presented here in *In re McInturff* (1951) 37 Cal.2d 876, 879 [236 P.2d 574]: "Petitioner relies upon *In re Rugland* (1947) 80 Cal.App.2d 316, 317 . . . . There, as here, a trial court had erroneously refused to certify a youth to the Authority at a time when section 1731.5 of the Welfare and Institutions Code required it to do so. Without mentioning the problem of whether the remedy of habeas corpus was available, the District Court of Appeal ordered that 'The causes are . . . remanded to the [trial court] . . . with directions to commit petitioner to the Youth Authority.' As petitioner points out, Rugland was less than 25 years of age at the time of the decision on habeas corpus, and was, therefore, a person who was still a possible subject for restraint by the Youth Authority. But when a youth whose custody the Authority has accepted becomes 25, the Authority must either discharge him or, if it believes him dangerous and the maximum term prescribed by law for his offense has not expired, it may ask the committing court to put him on probation or send him to state prison. (Welf. & Inst. Code, §§ 1771, 1780-1782.) Petitioner here is more than 25 years of age. Therefore, he says, he can no longer be subject to any action of the Youth Authority and he must be discharged." The *McInturff* court did not rule upon this issue because it concluded the issue was not cognizable on habeas corpus. The Supreme Court required criminal defendants to litigate the issue in trial proceedings.

age, an age when he might have been treated as a juvenile offender. On August 25, 1958, the presiding judge of the superior court conducted a hearing and determined appellee was unfit for juvenile court treatment. Appellee was charged as an adult and he pleaded guilty in superior court on September 15, 1958. The presiding judge conducted a sentencing hearing and imposed an indeterminate sentence of five years to life, the maximum sentence provided by California law. The court rejected two alternative choices of punishment—the granting of probation and the placing of appellee in CYA custody. Appellee petitioned for writ of habeas corpus in the United States District Court for the Northern District of California, contending he did not enjoy his constitutional right to competent and effective representation by counsel at the state court proceeding. The district court conducted a full evidentiary hearing, concluded appellee's representation was constitutionally inadequate, and granted the petition. The warden of San Quentin penitentiary appealed from the district court order granting petition and the Ninth Circuit affirmed. Since appellee did not have adequate representation in the state court proceeding, it was clear his conviction and sentence did not meet the requirements of the federal Constitution. The district court ordered appellee discharged from custody. In the usual case, the order is conditional, i.e., directing discharge unless, within a specified or reasonable time, appropriate state authorities afford the state prisoner an opportunity to replead with constitutional irregularities corrected. However the appellee in *Reagan* enjoyed California legal rights which were incident to his youth. These rights disappeared with the passage of time and were irretrievable. The Ninth Circuit concluded under these circumstances the district court made the proper disposition.

In *In re Pfeiffer* (1968) 264 Cal.App.2d 470 [70 Cal.Rptr. 831], Reagan's codefendant petitioned the First District Court of Appeal for a writ of habeas corpus to secure release from state prison. Three weeks after Pfeiffer reached his 17th birthday, he, Reagan, and Edward Murphy committed an armed robbery at a Merced County motel. At the time of the robbery and arrest, Pfeiffer and Reagan were parolees from CYA. The juvenile court found Pfeiffer and Reagan unfit for consideration under its procedures and waived jurisdiction over them. Pfeiffer and Reagan were not represented by counsel in the juvenile court. The court remanded Pfeiffer and Reagan for prosecution under the general criminal law. All three defendants pleaded guilty to first degree robbery and were sentenced to state prison for an indeterminate term of five years to life. Although each of the defendants was eligible for probation and CYA commitment, the sentencing court nevertheless committed them to state prison. In December 1963, Pfeiffer escaped from a Department of Corrections facility in San Bernardino County and six days later he perpetrated an armed robbery of a Los Angeles service station. Pfeiffer then went to New York City where he was steadily

employed until January 1965. He next traveled to Peru where he became a teacher for the North American-Peruvian Cultural Institute. In December 1965, authorities traced Pfeiffer to Peru, arrested him, and returned him to the United States. In Los Angeles, he pleaded guilty to the robbery which followed his escape. Pfeiffer was then taken to San Bernardino County where he pleaded guilty to escape from a state prison. Both the Los Angeles and San Bernardino courts concluded Pfeiffer was ineligible for probation due to the prior robbery conviction.

In ruling on Pfeiffer's petition for writ, the First District found the petition was based upon substantially the same facts as were found true in Reagan's federal habeas corpus proceedings. The 1958 Merced County proceedings related to and affected Reagan and Pfeiffer in substantially the same manner. The First District concluded Pfeiffer's 1958 conviction must be set aside on the ground that throughout the proceedings his representation was constitutionally inadequate. Thus, at the time of Pfeiffer's later convictions in Los Angeles and San Bernardino Counties, he had not previously been convicted of a felony and was eligible for probation under section 1203.

The First District granted the petition for writ of habeas corpus and directed the trial court to dismiss the 1958 robbery action pursuant to section 1385, stating: "Pfeiffer was denied his right to counsel during his summary juvenile court proceedings. Throughout the criminal proceedings his court-appointed representation was constitutionally inadequate. Ten years have now elapsed. If remanded to the superior court for correction of constitutional irregularities, since the charged offense was committed before he was 18 years old, he must necessarily again be referred to the juvenile court. (Welf. & Inst. Code, § 603.) Proceedings would there be taken to determine if Pfeiffer, now 27 years of age, is 'a fit subject for consideration under the Juvenile Court Law.' (Welf. & Inst. Code, § 604.) Such proceedings would now be a hollow ceremony leading to an obvious conclusion. Upon his return to the superior court his constitutional and statutory rights to a speedy trial on the 1958 offense are irrevocably denied him. If witnesses have any recall of the pertinent events, their reliability would be subject to question. If convicted, what had been Pfeiffer's right to have the court consider his commitment to the Youth Authority is now gone. Any attempt in either court to reconstruct conditions, or judicial consideration or intent, as they were in 1958, would be fruitless; the judges of both courts are now dead, and the attorney who represented Pfeiffer in the criminal courts has neither recollection nor records of the case. And on his void 1958 conviction Pfeiffer has already served time equal to the total term of many first degree robbery convictions. This state of affairs has been brought about, not

through any fault of Pfeiffer, but by a withholding from him of guaranteed rights." (*In re Pfeiffer, supra,* 264 Cal.App.2d 470, 476-477.)

The People contend the instant case is "absolutely distinguishable" from *Pfeiffer* and *Wilson* because real party's conviction was never overturned. In its first opinion, this court determined only that real party's sentence was improper because a juvenile could not be sentenced to life without possibility of parole. In its second opinion, this court ruled real party was entitled to an updated probation report and a new CYA amenability study and report. (*People* v. *Flores, supra,* 198 Cal.App.3d 1156, 1165-1166.) The People argue, in contrast to *Pfeiffer* and *Wilson,* real party's constitutional rights were never violated and his conviction by jury was proper.

Real party submits the People have drawn a distinction without a difference because the issue presented in *Wilson, Pfeiffer,* and the instant case is not one of guilt or innocence but is one of disposition: "Whether or not the convictions had been reversed in *Wilson* and *Pfeiffer,* the cases would have been dismissed because the focus was beyond the guilt stage of the case. The focus in both cases was on a [disposition] issue, which was the loss of opportunity to avail a defendant of the juvenile court law and a CYA commitment. This issue would have risen again even if there had been another conviction, so the conviction was immaterial. Likewise, that Mr. Flores' conviction was not reversed is immaterial to the application of *Wilson* and *Pfeiffer* to the facts of his case.

"Petitioner suggests that *Pfeiffer* and *Wilson* are distinguishable because real party's constitutional rights were never violated. . . .

"First, respondent expressly found that Mr. Flores' constitutional rights were violated. . . .

"Second, the above notwithstanding, this argument only goes to the propriety of the conviction, which isn't necessary for the application of the two cases, *supra,* so this point of petitioner's is of no consequence."

The People nevertheless contend the case of *Kent* v. *United States* (1966) 383 U.S. 541 [16 L.Ed.2d 84, 86 S.Ct. 1045] supports their position. In *Kent,* District of Columbia police arrested the 16-year-old petitioner for rape and robbery. The District of Columbia Juvenile Court waived jurisdiction of petitioner and directed he be held for trial in the United States District Court for the District of Columbia. The juvenile court held no hearings, made no findings, and did not recite any reason for the waiver. A short time later, the federal grand jury indicted petitioner on eight counts. At trial, petitioner maintained his unlawful act was the product of mental

disease or defect. Extensive evidence, including expert testimony, was presented to support this defense. The jury found petitioner not guilty by reason of insanity as to the rape counts and guilty of six counts of housebreaking and robbery. The court sentenced petitioner to serve a total of 30 to 90 years in prison. Under District of Columbia law, the insanity finding mandated petitioner's transfer to St. Elizabeths Hospital, a mental institution, until his sanity was restored. The court ordered the time spent at St. Elizabeths to be counted as part of the prison term. The United States Court of Appeals for the District of Columbia Circuit affirmed petitioner's conviction. The United States Supreme Court granted certiorari and remanded the case to the trial court, concluding the juvenile court waived jurisdiction without complying with required procedures.

The court held the waiver was invalid and tantamount to a denial of counsel. The court found no justification for the failure of the juvenile court to rule on petitioner's motion for a hearing and held that it erred by failing to grant a hearing. The Supreme Court concluded: "Ordinarily we would reverse the Court of Appeals and direct the District Court to remand the case to the Juvenile Court for a new determination of waiver. If on remand the decision were against waiver, the indictment in the District Court would be dismissed. See *Black* v. *United States* [(D.C.Cir. 1965) 355 F.2d 104 (122 App.D.C. 393)]. However, petitioner has now passed the age of 21 and the Juvenile Court can no longer exercise jurisdiction over him. In view of the unavailability of a redetermination of the waiver question by the Juvenile Court, it is urged by petitioner that the conviction should be vacated and the indictment dismissed. In the circumstances of this case, and in light of the remedy which the Court of Appeals fashioned in [*Black* v. *United States, supra*] we do not consider it appropriate to grant this drastic relief. Accordingly, we vacate the order of the Court of Appeals and the judgment of the District Court and remand the case to the District Court for a hearing *de novo* on waiver, consistent with this opinion. If that court finds that waiver was inappropriate, petitioner's conviction must be vacated. If, however, it finds that the waiver order was proper when originally made, the District Court may proceed, after consideration of such motions as counsel may make and such further proceedings, if any, as may be warranted, to enter an appropriate judgment." (*Kent* v. *United States, supra,* 383 U.S. at pp. 564-565 [16 L.Ed.2d at p. 99].)

Real party fails to address the significance of *Kent* in his return to and opposition to the petition for writ of mandamus. However, real party stated in his reply to the opposition to the motion to dismiss below: "The People cite *Kent* v. *United States* (1966) 383 U.S. [541] . . . and they point out that Mr. Kent had only served part of his sentence. However, the *Kent* court does not mention this as a reason for declining to release Mr. Kent. That

court did say, '. . . we do not consider it appropriate to grant this drastic relief,['] however the court explained itself in a footnote to this sentence, misleadingly omitted from the People's opposition paper. Footnote 33 explains that Mr. Kent was in a psychiatric hospital undergoing treatment as a result of the jury verdict on rape charges. . . . Mr. Kent was not found not guilty by reason of insanity on the rape charge. . . .

"The other five cases omitted from the People's opposition paper, but cited by *Pfieffer* [*sic*], hold that courts will rarely on habeas corpus, grant an insane person his unconditional release. Mr. Kent was suffering from Schizophrenic Reaction, Chronic [Undifferentiated] Type.

"Once all of the facts of *Kent* are revealed, this court can see that time served had nothing to do with the decision to remand, instead of release, Mr. Kent."

Welfare and Institutions Code section 1731.5 states in relevant part:

"(a) After certification to the Governor as provided in this article, a court may commit to the authority any person convicted of a public offense who comes within paragraphs (1), (2), and (3), or paragraphs (1), (2), and (4), below:

"(1) Is found to be less than 21 years of age at the time of apprehension.

"(2) Is not convicted of first degree murder, committed when that person was 18 years of age or older, or sentenced to death, imprisonment for life, imprisonment for 90 days or less, or the payment of a fine, or after having been directed to pay a fine, defaults in the payment thereof, and is subject to imprisonment for more than 90 days under the judgment.

"(3) Is not granted probation.

"(4) Was granted probation and probation is revoked and terminated.

"(b) The Youth Authority shall accept a person committed to it pursuant to this article if it believes that the person can be materially benefited by its reformatory and educational discipline, and if it has adequate facilities to provide that care."

Welfare and Institutions Code section 1771 states: "Every person convicted of a felony and committed to the authority shall be discharged when such person reaches his 25th birthday, unless an order for further detention has been made by the committing court pursuant to Article 6 (commencing with Section 1800) or unless a petition is filed under Article 5 of this chapter. In the event such a petition under Article 5 is filed, the authority

shall retain control until the final disposition of the proceeding under Article 5.''

Welfare and Institutions Code section 1780 states: "If the date of discharge occurs before the expiration of a period of control equal to the maximum term prescribed by law for the offense of which he or she was convicted, and if the Youthful Offender Parole Board believes that unrestrained freedom for said person would be dangerous to the public, the board shall petition the court by which the commitment was made.

"The petition shall be accompanied by a written statement of the facts upon which the board bases its opinion that discharge from its control at the time stated would be dangerous to the public, but no such petition shall be dismissed merely because of its form or an asserted insufficiency of its allegations; every order shall be reviewed upon its merits."

Welfare and Institutions Code section 1781 states in relevant part: "Upon the filing of a petition under this article, the court shall notify the person whose liberty is involved, and if he is a minor his parent or guardian if practicable, of the application and shall afford him an opportunity to appear in court with the aid of counsel and of process to compel attendance of witnesses and production of evidence. When he is unable to provide his own counsel, the court shall appoint counsel to represent him."

Welfare and Institutions Code section 1782 states: "Such committing court may thereupon discharge the person, admit him or her to probation or may commit him or her to the state prison. The maximum term of imprisonment for a person committed to a state prison under this section shall be a period equal to the maximum term prescribed by law for the offense of which he or she was convicted less the period during which he or she was under the control of the Youth Authority."

Under the facts of the instant case, real party was eligible for CYA commitment under Welfare and Institutions Code section 1731.5, subdivision (a) at the time of his remand to the superior court pursuant to this court's order of February 24, 1988. Therefore, he may still be committed to the Youth Authority pursuant to Welfare and Institutions Code section 1731.5 even though he is now over 25. We need not speculate what the CYA would have done with real party in 1981 or 1983 because he can now be committed to CYA for its action. Since real party is over age 25, the CYA may discharge him (Welf. & Inst. Code, § 1771) or the Youthful Offender Parole Board may file a petition for commitment to state prison if it believes "unrestrained freedom for said person would be dangerous to the public." (Welf. & Inst. Code, § 1780.) The court which hears the petition

may discharge the prisoner, admit him to probation, or commit him to prison as prescribed by the statute. (Welf. & Inst. Code, §§ 1781-1782.) At the hearing on the motion to dismiss below, the court assumed only one sentencing option was available to real party: "He can't do anything except go back to state prison for 27 to life." Although the law neither does nor requires idle acts (Civ. Code, § 3532), the lower court's assumption was erroneous in light of the statutory scheme governing CYA commitments.

■ As noted earlier, section 1385 provides the court may order a criminal action to be dismissed in furtherance of justice. "Furtherance of justice" as used in that section requires consideration of the constitutional rights of the defendant and the interests of society. Courts are empowered to fashion a remedy for deprivation of a constitutional right to suit the needs of the case. (*In re Pfeiffer, supra,* 264 Cal.App.2d 470, 477.) ■ In the instant case, the court may either commit real party to CYA for whatever determination it may see fit to make, under the law, as to his future custody or, alternatively, dismiss the action on its own motion pursuant to section 1385. In the latter case, the trial court must comply with the specific requirements of section 1385 as previously discussed. Such a remedy suits the unique needs of the instant case and is entirely consistent with *In re Pfeiffer, supra,* 264 Cal.App.2d 470 and *Wilson* v. *Reagan, supra,* 354 F.2d 45.

C., D.*

. . . . . . . . . . . . . . . . . . .

The application for writ of mandamus is granted. The Tulare County Superior Court is directed to vacate its April 19, 1989, order dismissing real party's murder conviction. The matter is remanded to the Tulare County Superior Court for further sentencing proceedings in accordance with our order of February 24, 1988, and the conclusions expressed herein.

Stone (W. A.), J., and Baxter, J., concurred.

---

* See footnote, *ante,* page 127.